L. G. HARRIS et al., Appellants,

v.

Scott E. ROBBINS et al., Appellees.

No. 6675.

Court of Civil Appeals of Texas.

Amarillo.

April 29, 1957.

Rehearing Denied May 27, 1957.

J. Farris Fish, Matador, for appellants.

Conner & Walker, Spur, for appellees.

PITTS, Chief Justice.

This appeal is from a judgment denying a purported joint will to probate after the probate of the same had been denied in county court and the applicant there had perfected an appeal to the district court. Proponent, L. G. Harris, an appellant herein, sought alone to have the said will admitted to probate in county court but after perfecting his appeal other proponents hereinafter named as appellants intervened and joined him in the district court by adopting his pleadings. Appellants alleged that during the year 1951 C. E. (Charley) Harris and wife, Della Harris, executed a joint, mutual and reciprocal will disposing of their property by providing for a life estate in all of it for the survivor; that after the

death of both of them by the terms of the said will they devised to appellant herein, L. G. Harris, a brother of C. E. Harris, all of the lands they owned in Bailey County, Texas, the same being a farm then occupied by L. G. Harris; that subject to the life estate provision they devised to Mrs. E. C. (Ivy) Reeves and Mrs. G. C. (Mabel) Cave, both sisters of C. E. Harris, the sum of $5,000; that subject to the life estate they devised to appellees herein, Shelly O. Turner, Ollie Z. Drake and Scott E. Robbins, all being children by a former marriage of Della Harris, all of the lands they owned in Motley County, Texas; that thereafter C. E. Harris died on August 9, 1952, and a few months later Della Harris died on April 15, 1953; that after the death of C. E. Harris the alleged will was "inadvertently or accidentally destroyed and cannot now be produced in court." But appellants herein have sought by application duly made to have the joint will admitted to probate and "letters testamentary of administration" issued to appellant, L. G. Harris. However, upon the trial appellants, without amending or changing their pleadings, have sought to establish the authenticity and contents of the joint will by oral testimony and are claiming only that part of the property devised by C. E. Harris, deceased, since it is admitted that Della Harris thereafter during her lifetime and after the death of C. E. Harris revoked any and every part of the said joint will that affected her property. Other appellants who intervened as proponents in the district court were nephews and nieces of C. E. Harris, deceased, who had no children of his own and whose parents had previously died. Intervenors are Carl Harris, Jr., Howard Harris and Hazel Harris, children of Carl Harris, Sr., deceased, who was a brother of C. E. Harris, deceased, and Joe Rossen, a child of Sally Rossen, deceased, a sister of C. E. Harris, deceased.

Appellees, Scott E. Robbins, Ollie Z. Drake, joined by her husband, Allan Drake, and Mrs. Shelly O. Turner, a feme

sole, children by a former marriage of Della Harris, deceased, resisted appellants' application to probate the said purported joint will alleging that C. E. Harris and Della Harris never executed any such will as alleged by appellants and that any and all wills executed by them had been revoked by them during the lifetime of both of them. The record reveals that all the parties to the suit agreed by stipulation that the alleged will offered for probate could not be found and therefore could not be produced in open court.

The case was tried to a jury and after the evidence closed appellees presented a motion for a peremptory instruction upon the alleged grounds in particular that appellants had failed to discharge the burden of proof cast upon them by offering competent evidence of probative force showing substantially the contents of the alleged lost will so that the same could and would constitute a muniment of title to the property in question and that appellants had also failed to discharge the burden of proof cast upon them to overcome the presumption of law that the said alleged lost will was revoked by C. E. Harris and Della Harris prior to the death of C. E. Harris by presenting clear and satisfactory evidence of probative force to show that such will had not been thus revoked by the makers thereof. The trial court sustained the motion of appellees, so instructed the jury and thereafter rendered judgment accordingly denying the will to probate from which judgment appellants perfected an appeal.

Appellants contend in effect that there was sufficient evidence to support a judgment admitting the joint will to probate insofar as such was the will of C. E. Harris, deceased. The two material questions here presented, either of which is controlling, are whether or not appellants offered satisfactory evidence to establish the substantial contents of the alleged joint will so that the same could and would consti-

tute a muniment of title to the property in question and whether or not appellants offered clear and convincing evidence to overcome the presumption of law that the makers of the alleged will destroyed and revoked the same. In order to discharge their burden of proof on both questions appellants presented the witness, Hon. Howard Traweek, an attorney at law who drew the alleged will in his office in Matador, Texas, where it was formally executed by C. E. Harris and wife, Della Harris, and duly witnessed in April, 1952, but no copy of the will was kept by anybody. When the witness was asked upon direct examination to testify as best he could remember what constituted the contents of the will, he testified as follows:

"A. I have tried that before in the County Court. I don't recall all of the contents of the will. I do know this that their home place out there, where they lived, was given to—out right to his children—well, first, this—back up on that. That the survivor of them, which ever out lived the other one was to have all of the real estate for his or her life time, and that after the death of the survivor Mrs. Harris' three children, of course, got the home place and I believe what they called the four-corners place, either got all of it or part of it, I am not sure on that. And, the land in Bailey County was to Mr. Harris's brother either out right or to him and some of Mr. Harris' other relatives. There were some neices and nephews of one of Mr. Harris' deceased brothers, as I recall, that were mentioned in the will, but I can't for the life of me recall what they were supposed to get, they either got part of the land in Bailey County or something else. And, then I believe all of the personal property was to Mrs. Harris' children. And, also a Mrs. Reeves, that I believe is a sister of Mr. Harris, was it Sweetwater?

"Q. Yeah. A. Somewhere down in there was given a bequest of two thousand dollars."

Then in question and answer form the witness further testified on direct examination:

"Q. Now, was she to get that when the first one of them died? A. No, that was after the death of the survivor.

"Q. In other words, the one that survived was to have the life estate in all of the personal property? A. Yes, that is right.

"Q. Now, then, did you in the will set out the description of this real estate that each one was—that each person was to get? A. It did set it out. That is what I can't recall, though, who got what of it. Of course, I am positive about the home place, and at least a part of what is called that four-corners place, I am not sure on that."

Upon cross examination concerning the contents of the will the witness further testified in question and answer form as follows:

"Q. Now, Mr. Traweek, if I understood your testimony on direct examination by Mr. Fish, you are not very definite and certain about the provisions of the will and the contests of the will, is that correct? A. That is right.

"Q. Your memory is just not good enough to serve you in that respect? A. Well, it has been a little over four years since I have seen that will.

"Q. And, you can't tell the jury positively now or with any substantial certainty about the provisions of the will and as to who got the property? A. On some of it I can't.

"Q. Particularly with reference to the Bailey County land, you can't tell the jury whether or not that will gave that land to L. G. Harris or whether or not it gave it to L. G. Harris and some of the children of another deceased brother of Charlie Harris', can you? A. That is correct.

"Q. And, you can't tell the jury with any certainty as to whether or not the will gave any of the Motley County land to some of the sisters of C. E. Harris? A. No, I don't remember. I do remember that all of the, what they call the home place went to her children and either all of the four-corners place or a part of it went to her children. I am sure as to that."

Then on redirect examination the witness testified as follows:

"Q. Howard, now you testified when this case was tried in the County Court? A. That is correct.

"Q. And, signed a statement as to what your testimony was? A. Yes.

"Q. Do you recall that you testified that the land in Bailey County was given to L. G. Harris and that you were rather sure of that? A. I am not sure.

"Q. Okay. I will read all of it, 'And the land in Bailey County, Texas, was given to L. G. Harris,' he was rather sure, 'but it could be that it was given to L. G. Harris and the children of a deceased brother of C. E. Harris.' A. I think that is about what I have testified here, Farris, I am not sure. I can't recall what provision was made in regard to those neices and nephews, I know they were mentioned in the will."

The two witnesses to the will, Glenn Woodruff and Paul Patton, both testified but neither of them gave any testimony as to the contents of the will since the proof shows that they did not know anything about the contents of the will as it was not read by either of them and was not read in

their presence. The foregoing testimony of the witness, Howard Traweek, was all the testimony given concerning the contents of the alleged will and no other evidence was offered in an effort to prove the contents of the alleged will.

Article 3349, Vernon's Ann.Civ.St., provides that:

"If the will be a written will which cannot be produced in court, the cause of its non-production must be proved, and such cause must be sufficient to satisfy the court that it cannot by any reasonable diligence be produced, and the contents of such will must be substantially proved by the testimony of a credible witness who has read it or heard it read."

In 57 Amer.Jur. 639–640, Sec. 983, the degree of proof required to establish the contents of a lost or destroyed will in various jurisdictions must be proof "to a reasonable certainty," "very clear and satisfactory," "clear and convincing," "strong and conclusive," "full and satisfactory," etcetera. While it is not necessary to establish all of the contents of an alleged lost will literally or verbatim, it is necessary to establish its material contents with some degree of certainty in order to be able to pass title to the property devised and such is particularly true of land. The statutory requirements for substantial proof of the contents of an alleged lost will have not been satisfied so long as the court is left in confusion about the real provisions of the will or how to vest title to the property involved.

Certainly Howard Traweek was a credible witness but it had been so long since he had read the will he did not remember its contents well enough to testify substantially as to its material provisions. The witness did not know whether the Bailey County farm was devised to L. G. Harris, a brother of C. E. Harris, deceased, or devised to L. G. Harris and some of the nieces and nephews of C. E. Harris, deceased, which nieces and nephews were not named by the witness. He did not know whether appellees herein, the children of Della Harris by a former marriage, got all of the "four-corners place" or only a part of it. The witness testified that he could not remember whether or not the will gave some of the Motley County land to some of the sisters of C. E. Harris, deceased, and that some of the nieces and nephews of C. E. Harris, deceased, were mentioned in the will but "I can't for the life of me recall what they were supposed to get, they either got a part of the land in Bailey County or something else." The witness was very uncertain about these material provisions of the alleged will. In any event, we find no evidence substantially proving the contents of the will so as to constitute a muniment of title to the property purportedly devised in the will. The testimony is so uncertain that we do not find any fact issue raised by it. The substance of the testimony of the only witness who testified concerning the contents of the alleged will is that he did not know what the material provisions of the will were. There is no conflict in the evidence as to the contents of the will and in our opinion there is no evidence of probative force to establish the material contents of the will with any degree of certainty. Based upon the evidence presented concerning the contents of the alleged will a jury panel or anybody else could do no more in any event than to conjecture or speculate as to the rights of the parties involved.

Under the provisions of Sec. 5 of Art. 3348, appellants had the burden of proving to the satisfaction of the court that the will had not been revoked by the makers thereof. The proof showed conclusively that the will was last seen in the possession of the makers thereof when they left the office of Howard Traweek after it was executed. Nobody had seen the will since that

time, although a diligent search had been made for it since the makers thereof died. When a will is last seen in possession of the makers thereof a failure to produce it after the death of the makers thereof raises the presumption in law that the makers destroyed the will with the intention of revoking it and the burden rests upon appellants here to prove the contrary by clear and satisfactory proof. 44 Tex.Jur. 919, Sec. 334; Bailey v. Bailey, Tex.Civ.App., 171 S.W.2d 162 and other authorities there cited.

Appellants' witness, Howard Traweek, testified that C. E. Harris and wife, Della Harris, talked to him before making the will and were rather unsettled about the best disposition to be made of their property; that they talked to him also about how to revoke a will after it was made and he told them a will could be revoked by destroying it, by tearing it up or by burning it or by making a subsequent will; that they did not seem to be very well pleased with the contents of the will they had executed; that during the few months Della Harris lived after her husband, C. E. Harris, died, he prepared for her and she executed another will but she thereafter destroyed it and finally died intestate. Other witnesses testified about conversations they had with Della Harris after the death of C. E. Harris about the property she and C. E. Harris owned and about a will or at least about some will but the proof shows Della Harris had executed two different wills within one year before she died and the conversations do not reveal clearly which will was discussed by the parties.

Mrs. W. Y. Higgins, an aunt of C. E. Harris, deceased, and appellant, L. G. Harris, gave testimony about general conversations she had with Della Harris before and after the death of C. E. Harris, concerning the property of C. E. Harris and wife, Della Harris, and their will. But she expressed some doubt about whether she could relate the contents of the conversa-

tions had and considering her testimony in its most favorable light, we do not feel it has probative force enough to raise an issue on the question of revocation of the alleged joint will. The same may be said about the testimony of Rev. L. W. Baker, the pastor of C. E. Harris and Della Harris during their lifetime, and about the testimony of the witness, Mrs. L. G. Harris, wife of appellant, L. G. Harris.

The testimony of appellants' witness Traweek lends no support to their contention that the alleged joint will had not been revoked. On the contrary, his testimony lends aid to appellees' contention of presumption of revocation by the makers. Except for Traweek's testimony, all of the evidence offered in an effort to rebut the presumption of revocation consists of statements attributed to Della Harris who did no more than refer to the will and mention the status of the property of herself and C. E. Harris. The record reveals that some of the said property was separate property of Della Harris and that she held control of all of the property in question during the few months she lived after the death of her husband. No statement she made showed the existence of the alleged joint will in question after the death of C. E. Harris. In any event it seems that her declarations alone would be insufficient to establish any material fact sought to be established concerning the alleged lost will but such could serve only to corroborate the main facts sought to be proved. Miller v. Miller, Tex. Civ.App., 285 S.W.2d 373 and other authorities there cited.

The evidence reveals conclusively that Della Harris destroyed and revoked the will she had made subsequent to her husband's death and it must be presumed under the record that she and C. E. Harris had previously revoked the joint will they executed prior to the death of C. E. Harris until the contrary is shown. We find no clear and convincing evidence of any character in the record or any evidence of pro-

bative force to overcome such presumption or to raise an issue of revocation. Tynan v. Paschal, 27 Tex. 286; Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 270 S.W. 1001; Williams v. White, Tex.Civ. App., 105 S.W.2d 1105; May v. Brown, 144 Tex. 350, 190 S.W.2d 715, 165 A.L.R. 1180; Bailey v. Bailey, Tex.Civ.App., 171 S.W.2d 162; Davis v. Roach, Tex.Civ.App., 138 S.W.2d 268; Clover v. Clover, Tex.Civ. App., 224 S.W. 916; 44 Tex.Jur. 919.

■ Appellants further complain because the trial court, as a result of appellees invoking the provisions of "The Dead Man's Statute," Art. 3716, excluded the testimony of appellant, L. G. Harris, concerning a conversation he had with testratrix, Della Harris, deceased, allegedly about the joint will in controversy after the death of C. E. Harris. It must be remembered that appellants sought by their pleadings to have the joint will admitted to probate and to have the witness, L. G. Harris, an alleged beneficiary whose testimony they then tendered, named as administrator of the estate. It is admitted, however, that a joint will may be admitted to probate as the will of either party or as the will of both parties. Appellants' bill of exception reveals that the witness if permitted would have testified on direct examination that during the said conversation Della Harris asked the witness "if he knew about the will" and he replied "he did"; that she then stated "they had left Myrtle (a sister to the witness and C. E. Harris, deceased) out of the will and she thought she would change it because Charley had worried about leaving her out"; that Della Harris then asked him if Myrtle had enough to take care of her to which he answered that "if that was why she was going to change the will, she needn't do so, because Myrtle had plenty to take care of her." The witness, as an appellant herein, and the other appellants herein were claiming as beneficiaries under the terms of the alleged lost will offered for probate and appellees were claiming as heirs of Della Harris, deceased. Appellees further contended that if the will be not admitted to probate, they would be entitled to receive all of the property here in controversy as heirs of Della Harris. Under the record before us it is our opinion that the trial court properly held that the witness, L. G. Harris, was not a competent witness to testify about the matters here involved because of the construction the courts have given the provisions of Art. 3716. Neblett v. Cooper Grocery Co., Tex.Civ.App., 180 S. W. 1162; McCall v. Owens, Tex.Civ.App., 68 S.W.2d 1089; Bowers v. Bowers, Tex. Civ.App., 99 S.W.2d 334; Miller v. Miller, supra. However, if the testimony in question had been admitted, the language used in the conversation did not reveal which will was being referred to by the parties and there was nothing said to indicate that the joint will here involved had not been revoked by the makers.

For the reasons stated it is our opinion that appellants' points of error should be overruled. It is so ordered and the judgment of the trial court is affirmed.

CHAPMAN, J., not participating.