**Patricia Maxwell STEWART, Appellant,**

**v.**

**Charles Everett LONG, Appellee.**

**No. 16587.**

Court of Civil Appeals of Texas.

Dallas.

July 23, 1965.

Rehearing Denied Sept. 24, 1965.

Saner, Jack, Sallinger & Nichols and Tim Kirk, Dallas, for appellant.

McNees & McNees and James L. McNees, Jr., Dallas, for appellee.

WILLIAMS, Justice.

This is a will contest. Patricia Maxwell Stewart, hereinafter referred to as proponent, filed a will of Alta Long, hereinafter called decedent, for probate in the Probate Court of Dallas County, Texas. Charles Everett Long, hereinafter referred to as contestant, resisted the offer of probate, contending that a later will had been executed by the decedent. The judge of the Probate Court admitted the will of decedent to probate. Contestant perfected his appeal to the District Court of Dallas County, Texas where the same issues were joined as in the Probate Court. The case was tried before a jury and, based upon the answers of the jury to special issues submitted, the trial court rendered a judgment denying the will offered by proponent to probate. Appellant-proponent has appealed from such judgment and her points are of such a nature that require a summarization of the essential facts.

## FACTS

Alta Long died in Dallas County, Texas on February 17, 1963. On June 19, 1963 Patricia Maxwell Stewart filed for probate in the Probate Court of Dallas County an instrument dated July 22, 1959 executed by decedent and duly witnessed and made self-proving pursuant to the provisions of Section 59 of the Probate Code of Texas. By the terms thereof decedent left all of her property to her niece, the proponent herein. Charles Everett Long, decedent's husband, contested the application for the probate of this will, contending that decedent had

revoked said will by a later instrument. This contest was denied by the Probate Court and appeal was taken to the District Court for a trial *de novo* of the same issues.

In the District Court proponent introduced the will of July 22, 1959 together with the testimony of one of the witnesses thereto, Mrs. Steen, who said that she had witnessed the will and that as far as she knew such will had never been revoked. Proponent produced no further testimony and rested her case.

Contestant produced the witness Bruce Graham, an attorney, of Greenville, Texas, who testified that he had drafted the will dated July 22, 1959, and had witnessed the execution of the same with the formality as required by the Probate Code, and as far as he knew that will had never been revoked. Mr. Graham said that on April 18, 1961 he came to Dallas from Greenville where he interviewed Mrs. Long, at her request, and was asked by her to prepare another will. He stated that Mrs. Long had expressed concern to him concerning the way her niece, the proponent, had wasted the estate she had received from her father and that she, Mrs. Long, no longer wanted her to be the beneficiary under her will. After consultation with her for some time Mr. Graham said that Mrs. Long expressed the desire to think the matter over and told him that she would contact him later concerning the terms of the proposed new will. He said that a few days later Mrs. Long and her husband came to Greenville from Dallas and that she then requested that he draft a new will in accordance with the terms discussed earlier in Dallas. He said that he then drafted the will according to Mrs. Long's desires and mailed to her the original, retaining a carbon copy for his files. He identified Contestant's Exhibit C–1 as a copy of the instrument which he had retained for his files and being an exact copy of the instrument that he had drafted and sent to Mrs. Long. Contestant's Exhibit C–1 appears to be a form of a will which provides

that contestant is to be the independent executor of the decedent's estate; that contestant is given a life estate in the homestead in Dallas, Texas; that the residue of testatrix's estate is to be conveyed in trust for three children of proponent, said trust to be used for the education of the children named. Mr. Graham related that when he mailed the original of Contestant's Exhibit C–1 to Mrs. Long he suggested to her that she execute the same at a title company or other place in her neighborhood. He said that he forwarded a bill for services for preparing this will to Mrs. Long which was subsequently paid. He further testified that as far as he knew this instrument which he had prepared was never executed by Mrs. Long.

Contestant produced Mrs. Jane Reuter, a friend of decedent, who testified that a few days before Mrs. Long's death she had talked to her at Lake Whitney and in this conversation Mrs. Long had stated that she did not want her niece, Patricia Stewart, to benefit from her estate and that she wanted it to pass to her husband and grandchildren. She expressed some worry and concern to Mrs. Reuter whereupon Mrs. Reuter suggested that she ought to make a will which expressed her desires. Thereupon Mrs. Long said that: "It had already been attended to."

Elizabeth Jean Pace, decedent's stepdaughter, testified that on April 28, 1961 she borrowed decedent's automobile and Mrs. Long had called her that afternoon for the return of the car because, in Mrs. Long's words, "She had to go and have her will signed," and she had to be there at four p.m. Mrs. Pace testified that when she delivered the car to Mrs. Long she saw that she had an envelope. She did not see the contents of the envelope but said that Mrs. Long had told her that she had her will, that she had to go and get it signed. The witness testified that in November or December of 1961 she saw the original of Contestant's Exhibit C–1 and at that time she recognized Alta Long's signature as

signed to the will at the places marked "Testatrix". She also testfied that she saw that the blanks for the witnesses were signed and that the notary had signed and put a notarial seal on the instrument. She did not recall the names of the witnesses nor the notary public. She denied that she had ever seen the original of C–1 at any other time.

Contestant testified that he first saw the original of C–1 on April 27, 1961 and at that time there were no signatures on the instrument. He testified, over objection that such testimony invaded the rule of Art. 3716, Vernon's Ann.Civ.St. (Dead Man's Statute), that he next saw the instrument on April 28, 1961; that on that occasion he looked at the instrument and all the blanks were signed, including witnesses and a notary public. He saw decedent's name signed to the original of C–1. He does not recall the names of either of the witnesses nor the notary public. He saw this instrument once or twice subsequent to that occasion, same being in an envelope in the cedar chest. The last time he saw Exhibit C–1 was on January 1, 1963 but has not seen it since. He testified to making efforts to locate the original of Exhibit C–1 by advertising in both daily papers and also sending out printed circulars to various friends and people.

The original of Contestant's Exhibit C–1 was never produced in court and no further testimony introduced to identify the witnesses or the notary public who allegedly had signed the original of said instrument.

Contestant closed its case with the above testimony and proponent offered no further testimony.

The court submitted two special issues, as follows:

"SPECIAL ISSUE NO. 1: Do you find from a preponderance of the evidence that at any time after April 26, 1961, and before her death, Mrs. Alta Long signed, as testatrix, the original instrument of which Exhibit C–1 is a copy?"

To which the jury answered "Yes".

"SPECIAL ISSUE NO. 2: Do you find from a preponderance of the evidence that after Mrs. Alta Long signed the original instrument, of which Exhibit C–1 is a copy, if you have heretofore found she did so, such instrument was signed, in the presence of Mrs. Alta Long, by two credible witnesses above the age of fourteen years?"

To which the jury answered "Yes".

OPINION

By her first nine points of error, grouped together, appellant-proponent challenges the judgment denying decedent's will for probate for the reason that there was no evidence, or insufficient evidence, to support the jury verdict, and the judgment of the court. By these points appellant-proponent contends that the will offered by her was shown to have been executed and entitled to probate unless the evidence demonstrates that such will had been revoked by a subsequent instrument executed with the same formalities as the first will. Sec. 63, Probate Code. Appellant-proponent argues that since the subsequent instrument relied upon by appellee-contestant was nothing more than an unexecuted typewritten copy of a purported will, and since there was no evidence, or insufficient evidence, to demonstrate the proper execution of said subsequent will, there is no basis for denying the probate of the will tendered. Appellee-contestant contends that while it is true he was unable to produce the original of the alleged subsequent will yet the jury was justified in answering the special issues submitted based upon "evidence legally deducible from the facts established." Appellee-contestant relies upon such cases as Miller v. Miller, Tex.Civ.App., 285 S.W.2d 373; Tynan v. Paschal, 27 Tex. 286; Massey v. Allen, Tex.Com.App., 248 S.W. 1067, and other cases, to support his contention.

■ We find no quarrel with the rule of law relied upon by appellee-contestant in the above recited cases, but we are unable to agree with him that there is any evidence of probative force to justify the answer of the jury to Special Issue No. 2 relating to the attesting witnesses. We agree with appellant-proponent that the record in this case is entirely devoid of any evidence (1) as to the age of the alleged attesting witnesses; (2) whether they were credible witnesses within the meaning of the Probate Code; and (3) whether they executed the same in the presence of the testatrix, and at her request. We sustain appellant-proponent's Points 2, 4 and 5 relating to "no evidence" and "insufficient evidence" as to Special Issue No. 2.

By her tenth point of error, appellant-proponent complains of the action of the trial court in admitting in evidence the testimony of contestant that he had seen the name and signature of the decedent upon the purported will marked Exhibit C–1 in that such testimony violated Art. 3716, V.A. C.S., commonly known as the Dead Man's Statute. The facts surrounding contestant's testimony relating to his viewing Exhibit C–1 are found in his testimony, as follows:

"The Court interrogated the Contestant as follows:

" * * * Now, before I rule on this question, I'll ask the witness: You say you saw the original of Exhibit C–1 in your bedroom?

"THE WITNESS: I did.

"THE COURT: Was Alta Long present at the time?

"THE WITNESS: Not necessarily. She went in the kitchen to fix dinner.

"THE COURT: Was she in the room at any time about which your counsel has questioned you, in your presence?

"THE WITNESS: It all depends on for what purpose you're asking your question. Sure she was in the room at times, but it wasn't purposely done on this will. That will was laid there on the bed to show me what was going on.

"THE COURT: All right. All right. Just a minute. You say that the original of Exhibit C–1 was spread out on the bed?

"THE WITNESS: No, it was in the envelope it came in. I picked it up.

"THE COURT: Did you put it on the bed?

"THE WITNESS: No, sir.

"THE COURT: How did you come into possession of it?

"THE WITNESS: I found it on the bed.

"THE COURT: Do you know by whom it had been placed there?

"THE WITNESS: Certainly, I knew. Anybody would understand that."

Following this testimony he was permitted to say, over objection of appellant-proponent, that he had recognized the decedent's signature on the original of C–1 and that he had seen that it had been signed by witnesses and a notary public, the names of which he did not know.

■ We agree with appellant-proponent that the court erred in admitting this testimony, under the circumstances as revealed. Obviously, from contestant's own testimony: "That will was laid there on the bed to show me what was going on," we can only conclude that decedent had placed the will on the bed; that she was in and out of the room from time to time; and that his view

of the instrument was nothing more than a part of a transaction with his wife.

As Chief Justice Dixon of this Court said in Munden v. Chambless, 315 S.W.2d 355:

"It has been held that the word transaction as used in the statute includes every method whereby one person can derive impressions or information from the conduct, condition or language of another, including written as well as oral communications. It has been said that the test is whether, in case the witness testified falsely, the deceased, if living could contradict the testimony of his own knowledge."

We think the testimony in this case reveals a "transaction" with the decedent that would prohibit the testimony of contestant. Art. 3716, V.A.C.S.; Leahy v. Timon, 110 Tex. 73, 215 S.W. 951; Perdue v. Perdue, 110 Tex. 209, 217 S.W. 694, 220 S.W. 322; Mitchell v. Deane, Tex.Com.App., 10 S.W. 2d 717; Roberts v. Bush, Tex.Civ.App., 352 S.W.2d 337; 19 Tex.Jur.2d § 989, pp. 40–42.

Appellee-contestant, by counterpoint contends that since the burden of showing non-revocation of the will was upon appellant-proponent, and since she failed to request special issues on the question of non-revocation, that such issues must be deemed to have been found by the court in favor of the judgment. We overrule this contention. A review of the entire record in this case leads us to the conclusion that the case should be reversed and remanded for a new trial. This should be done both in the ends of justice and for the reasons assigned by us in sustaining appellant-proponent's points. In addition thereto we believe that the case was submitted upon an erroneous theory concerning the burden of proof on the issue of non-revocation. Since the case will have to be retried we think it apropos to set forth certain rules and standards applicable and which should aid the trial judge in submitting the case to the jury.

(1) Since this case is one to probate a will in which a contest has been filed the basic inquiry is whether the will sought to be probated is the testatrix's will or whether it is not, and such inquiry embraces the question whether the will offered for probate has been revoked. Langehennig v. Hohmann, 139 Tex. 452, 163 S.W.2d 402.

(2) In such a case the burden of proof is upon the proponent of a will to prove that the will offered was not revoked by the testatrix. Sec. 88(b) (3), Texas Probate Code, V.A.C.S.

(3) Proponent's burden of proving that the will has not been revoked is discharged and the will is entitled to be probated when its due execution is proved, in the absence of circumstances which cast suspicion on it, or in the absence of evidence of its revocation. "This is done by a presumption of continuity of status and a prima facie case against a revocation. If the contestant puts in sufficient evidence to rebut the presumption of non-revocation, then the burden of going forward with the evidence shifts back to the proponent of the will, and he must discharge, by a preponderance of the evidence, his burden of proof that the will was not revoked." Usher v. Gwynn, Tex.Civ.App., 375 S.W.2d 564, affirmed Supreme Court, Ashley v. Usher, 384 S.W.2d 696; McElroy v. Phink, 97 Tex. 147, 76 S.W. 753, 77 S.W. 1025; May v. Brown, 144 Tex. 350, 190 S.W.2d 715, 165 A.L.R. 1180; Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 270 S.W. 1001, 6 Tex.L.Rev. 556.

(4) Texas courts have recognized a distinction between evidence sufficient to raise the issue of the act of revocation and sufficient evidence to show execution of a subsequent revoking will. Brackenridge v. Roberts, supra; May v. Brown, supra; Usher v. Gwynn, supra.

In the event the evidence of contestant is sufficient to overcome the presumption of continuity and to thereby cast

upon proponent the burden of going forward with proof to establish the non-revocation of the tendered will, the court should then submit to the jury an issue or issues as to whether the proffered will has been revoked, properly placing the burden of proof upon proponent. Usher v. Gwynn, supra.

The judgment of the trial court is reversed and remanded.

Reversed and remanded.