**HOWARD HUGHES MEDICAL INSTITUTE, Appellant,**

v.

**George F. NEFF, Administrator of the Estate of Annette Lummis, et al., Appellees.**

**No. C2836.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 5, 1982.

944

Randall W. Wilson, Susman & McGowan, Daryl Bristow, Baker & Botts, Houston, Paul Freese, Williams, Reickert, Kindell & Anderson, Los Angeles, Cal., J. Clifford Gunter, III, Bracewell & Patterson, Houston, George Dean, Destin, Fla., for appellant.

Wayne Fisher, Fisher, Roch & Gallagher, O. Theodore Dinkins, Jr., Butler, Binion, Rice, Cook & Knapp, Houston, Rick Harrison, McGinnis, Lochridge & Kilgore, Austin, Tex., for appellees.

Before MILLER, MORSE and JAMES, JJ.

JAMES, Justice.

This is an appeal from a judgment of the probate court of Harris County, denying and dismissing an application for probate of either of two alleged wills of Howard Robard Hughes, Jr. The application was filed by the Howard Hughes Medical Institute (hereafter HHMI or appellant) as the principal beneficiary of a lost will supposedly executed sometime between 1953 and 1963 or as the intended beneficiary or beneficiary under the *cy pres* doctrine of a lost will allegedly dated and executed on May 30, 1925. The State of Texas and the court-appointed attorney ad litem for unknown heirs, appellees herein and contestants in the court below, moved for a hearing *in limine* to require that HHMI prove its standing as a party interested in the Hughes estate. Contestant Neff, the executor of an aunt of Hughes, filed a motion for summary judgment. Contestants McIntyre and Bond, a cousin of Hughes and the executor of the estate of a cousin of Hughes, respectively, also filed a joint motion for summary judgment. Since the questions of the existence and validity of any will and HHMI's position to benefit therefrom relate to the standing issue, the parties agreed to conduct the evidentiary hearing on standing and the hearing on the motions for summary judgment together. This hearing was conducted on December 2, 1980. On February 27, 1981, the trial court signed a judgment ordering that contestants are entitled to judgment as a matter of law, and denying and dismissing HHMI's application for probate. The question for this Court is whether the record on appeal will sustain the judgment dismissing the application for probate on the basis of any of the issues raised below by the motions for summary judgment or by the *in limine* evidentiary hearing on the standing question. We find that the record will sustain the judgment and accordingly affirm.

Howard Robard Hughes, Jr. died on April 5, 1976. Since his death, much time and money has been spent in conducting searches to determine whether Hughes left a will. Shortly after his death, a Superior court in California ordered a will search there discontinued. Two years later, that

same court found that Hughes died intestate. While the California proceeding was pending, HHMI filed a petition for probate of one or another of the alleged lost wills in a Nevada district court. That court entered a summary judgment adverse to HHMI. The judgment of the Nevada trial court was subsequently affirmed by the Nevada Supreme Court. *See Howard Hughes Medical Institute v. Gavin,* 96 Nev. 905, 621 P.2d 489 (1980). During the pendency of the Nevada proceeding, HHMI entered an appearance in the Texas probate court. However, no application for probate was then filed. Pursuant to this appearance Hughes' heirs moved for a summary judgment to have the court below declare that HHMI's claim as a beneficiary under an alleged will was invalid. The probate court granted the motion in favor of the heirs. This Court reversed, holding that the declaratory judgment was an advisory opinion before joining of issue in a will contest and before the expiration of the time allowed by law for the filing for probate of a valid last will. *Howard Hughes Medical Institute v. Lummis,* 596 S.W.2d 171 (Tex.Civ.App.— Houston [14th Dist.] 1980, writ ref'd n.r.e.); *see also,* Tex.Prob.Code Ann. § 73 (Vernon 1980)[1], providing for a four year statute of limitations for the probate of a will. Coming dangerously close to the expiration of this four year period, HHMI filed its Texas application for probate. At the December 2, 1980 hearing on motion to show interest and motions for summary judgment, HHMI offered much of the record developed in Nevada, since the will offered for probate there was the alleged 1953–1963 or 1925 will offered in the court below. It is for this reason and because HHMI invoked the jurisdiction of the Nevada courts that appellees Neff, McIntyre and Bond all urge this court to give full faith and credit to the judgment of the Nevada court. *See* U.S. Const. art. IV § 1. We will first discuss the issue of the alleged lost wills. We will conclude with a discussion on the issues of standing/*cy pres* and full faith and credit.

1. All references to Texas Probate Code will

## THE ALLEGED LOST WILLS

Appellant relies on the following facts to establish its claim under a will allegedly executed sometime between 1953 and 1963, or in the alternative, a will allegedly executed on May 30, 1925: In a letter to Hughes dated January 31, 1929, Frank Andrews, Hughes' lawyer, referred to a copy of the "will you executed ... [on] May 30, 1925." That letter also states, "Except as to dates and witnesses, this is an exact copy of the will you executed." An unsigned file copy of a will bearing the handwritten date "May 30, 1925" was found in Frank Andrews' files. The copy provided for the disposition of the bulk of Hughes' estate to a medical research institute (the Howard Hughes Medical Research Laboratories) to be formed after his death. Appellant submits that the execution of this 1925 will was further confirmed by the discovery of an original holographic codicil in Hughes' handwriting, dated June 10, 1939, directing the deletion from the will of the name R.C. Kuldell, a name appearing in the copy found in Andrews' files. In a letter to Hughes dated April 23, 1929, Mr. Andrews wrote, "I do not wish to seem critical of the testamentary revision referred to by Mr. Dempsey. In lieu of the suggestions made by him it occurs to me that everything would be very much simplified by creating at once the trust you desired to carry out." Appellant surmises that "heeding such advice," Hughes created HHMI twenty-four years later in 1953, and that in a will allegedly executed sometime between 1953 and 1963, Hughes left HHMI the bulk of his estate. For this contention, appellant relies on the deposition testimony of a former Hughes executive. This executive, John T. Pettit, testifies that in 1963, Mr. Raymond Cook, a partner in the Andrews, Kurth law firm showed him a document which Mr. Cook identified as Hughes' will. Mr. Pettit testified that to the best of his recollection, he was shown a very thin document. Upon "glancing" at the document, Mr. Pettit's

hereafter be cited "Probate Code § 73," etc.

"impression" was that "everything was left to HHMI." No will bearing Howard Hughes' signature and the signature of two witnesses was produced in court. HHMI relies on the above evidence and other evidence to be discussed where applicable to establish its claim under either of these two alleged lost wills.

### a. Due Execution

Following appellant's statement of its only point of error complaining of the probate court's granting of a summary judgment, appellant states that "Texas law clearly permits the use of secondary evidence of due execution when, despite diligent inquiry, the identity of the attesting witnesses cannot be discovered." It argues that Probate Code § 84 is a permissive "best evidence" rule that permits the use of secondary evidence so long as the absence of preferred evidence is "accounted for." HHMI reasons that because Probate Code § 88(b) provides the substantive requirement that the applicant prove due execution of a will "to the satisfaction of the court," "[S]ections 84 and 85 of the Probate Code are procedural rules as to methods of satisfying Section 88's substantive requirement...."

Section 88 of the Probate Code provides first for "General Proof" required whenever an applicant seeks to probate a will. This requirement includes such items as proving that the person is dead, that four years have not elapsed since his demise and that the court has jurisdiction and venue over the estate. Pursuant to Probate Code § 88(a) the applicant must first prove these items "to the satisfaction of the court." Part (b) of § 88 thereafter provides as follows:

(b) Additional Proof for Probate of Will. To obtain probate of a will, the applicant must also prove to the satisfaction of the court:

(1) If the will is not self-proved as provided by this Code, that the testator, at the time of executing the will, was at least eighteen years of age, or was or had been lawfully married, or was a member of the armed forces of the United States, and was of sound mind; and

(2) If the will is not self-proved as provided by this Code, that the testator executed the will with the formalities and solemnities and under the circumstances required by law to make it a valid will; and

(3) That such will was not revoked by the testator.

The words "to the satisfaction of the court" thus do not provide the exclusive requirement of proof for the probate of a will. What must be proved "to the satisfaction of the court" is the specific requirement that the testator executed the will "with the formalities and solemnities and under the circumstances required by law to make it a valid will." The manner of proving execution with the formalities and solemnities required to make it a valid will is set out in Probate Code § 84 for a will produced in court and in Probate Code § 85 for a will not produced in court.[2]

---

2. Probate Code § 84(b) provides as follows:
(b) Attested Written Will. If not self-proved as provided in this Code, an attested written will produced in court may be proved:
(1) By the sworn testimony or affidavit of one or more of the subscribing witnesses thereto, taken in open court.
(2) If all the witnesses are non-residents of the county, or those who are residents are unable to attend court, by the sworn testimony of any one or more of them by deposition, either written or oral, taken in the same manner and under the same rules as depositions taken in other civil actions; or, if no opposition in writing to such will is filed on or before the date set for hearing thereon, then by the sworn testimony or affidavit of two witnesses taken in open court, or by deposition in the manner provided herein, to the signature or the handwriting evidenced thereby of one or more of the attesting witnesses, or of the testator, if he signed the will; or if it be shown under oath to the satisfaction of the court that, diligent search having been made, only one witness can be found who can make the required proof, then by the sworn testimony or affidavit of such one taken in open court, or by deposition in the

HHMI asserts that the provisions of Probate Code § 84(b) are permissive and not mandatory because the legislature used the word "may" in setting out the ways in which an attested written will may be proved. Appellant relies on *In re Estate of Page*, 544 S.W.2d 757 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.) for this proposition.

In *Page*, the proponent proved that one of the witnesses to the will was dead and the other "could not be located." The contestant argued that since the proponent failed to prove that the one who could not be located was dead or in the armed forces, proper execution of the wills was not shown. The court held that the requirements of Probate Code § 84 are not mandatory. However, the court continued:

> ... before any secondary evidence of the proper formalities of a Will may be offered, the Proponent must first account for the witnesses and offer some reason for their failure to appear and offer primary evidence of the validity of the Will.

544 S.W.2d at 759.

The court stated that since it was conclusively established that one witness was dead and the other could not be located, "[I]t was therefore permissible for the Proponent to proceed with secondary evidence as to the validity of the Will." In *Page*, the evidence offered was the testimony of two witnesses who testified to the genuineness of the signatures of the testator and the other witness. This is precisely the kind of secondary evidence that Probate Code § 84(b)(3) requires. Consequently, *Page* is distinguishable. In the instant case, the secondary evidence on which appellant relies is not of the kind contemplated in Probate Code § 84(b)(3).

■■■ To prove due execution of the alleged 1925 will, appellant relies on a statement in the January 31, 1929 letter by Frank Andrews wherein Mr. Andrews refers to a copy of the "will ... executed ... [on] May 30, 1925." Assuming that this evidence could be considered probative in proving due execution of a will, the statement is inadmissible as hearsay because it is an out-of-court statement offered to prove the truth of the matter asserted. *See Hartford Accident & Indemnity Company v. McCardell*, 369 S.W.2d 331, 337 (Tex.1963). HHMI submits that the letter is admissible under the ancient documents exception to the hearsay rule. The ancient documents exception applies only to permit evidence of the truth of *facts* recited in a document, thus excluding opinion or conclusion evidence. 1A R. Ray, Texas Law of Evidence

manner provided herein, to such signatures or handwriting.

(3) If none of the witnesses is living, or if all of such witnesses are members of the armed forces of the United States of America or of any auxiliary thereof, or of the armed forces reserve of the United States of America or of any auxiliary thereof, or of the Maritime Service, and are beyond the jurisdiction of the court, by two witnesses to the handwriting of one or both of the subscribing witnesses thereto, or of the testator, if signed by him, and such proof may be either by sworn testimony or affidavit taken in open court, or by deposition, either written or oral, taken in the same manner and under the same rules as depositions taken in other civil actions; or if it be shown under oath to the satisfaction of the court that, diligent search having been made, only one witness can be found who can make the required proof, then by the sworn testimony or affidavit of such one taken in open court, or by deposition in the manner provided herein, to such signatures or handwriting.

Probate Code § 85 provides as follows:

§ 85. Proof of Written Will Not Produced in Court

A written will which cannot be produced in court shall be proved in the same manner as provided in the preceding Section for an attested written will or an holographic will, as the case may be, and the same amount and character of testimony shall be required to prove such will as is required to prove a written will produced in court; but, in addition thereto, the cause of its non-production must be proved, and such cause must be sufficient to satisfy the court that it cannot by any reasonable diligence be produced, and the contents of such will must be substantially proved by the testimony of a credible witness who has read it or heard it read.

§§ 1374, 1375 (Texas Practice 3d ed. 1980). In any event, to qualify for admission, recitals in an ancient document must be shown to have been made upon the personal knowledge of the declarant. *Sherrill v. Estate of Plumley,* 514 S.W.2d 286, 290, 291 (Tex.Civ.App.Houston [1st Dist.] 1974, writ ref'd n.r.e.); 1A R. Ray, Texas Law of Evidence § 1376 (Texas Practice 3d ed. 1980). Appellant has not offered any evidence that Andrews had personal knowledge of a will signing ceremony. Nevertheless, for the letter to provide the necessary proof required by § 84, it would need to be taken as testimony that, pursuant to the provisions of Probate Code § 59, the will was subscribed by two or more credible witnesses above the age of fourteen years in the presence of the testator. *See Stewart v. Long,* 394 S.W.2d 25 (Tex.Civ.App. Dallas 1965, writ ref'd n.r.e.).

■ Appellant's only evidence relevant to this issue is the deposition testimony of Ms. Kate Ebdon, Frank Andrews' long-time secretary. Appellant, referring to Ms. Ebdon's testimony, states that "it was Andrews' practice not to retain drafts of wills or the originals of wills, but only to retain copies of executed wills of his clients." Ms. Ebdon actually testified that in those instances where *she typed* a will for Andrews, a carbon copy was placed in the client's personal file. Where changes were made and a draft of a will was retyped, she did not recall whether she took it out of the file and replaced it with the copy of the newly typed original. Ms. Ebdon further testified that she only typed five or six wills during her tenure with Andrews and that she never typed a will for Hughes. To the best of her recollection, Ms. Ebdon did not type the copy of the alleged 1925 will because the copy of that alleged will shows a different "typing set up" and wording from those of the wills she typed. To infer from Andrews' conclusion that "the will ... executed" was executed with all the formalities of law would inject speculation and conjecture into an otherwise solemn procedure

much protected in law. As the Texas Supreme Court has said, "... a vital fact may not be established by piling inference upon inference." *Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.,* 435 S.W.2d 854, 858 (Tex.1968). We find that this evidence is insufficient to raise a fact issue that the alleged will was executed with the formalities and solemnities required to make it a valid will. *See Mossler v. Johnson,* 565 S.W.2d 952 (Tex.Civ.App.— Houston [1st Dist.] 1978, writ ref'd n.r.e.), holding that where the evidence is insufficient to support a finding that the instrument was attested as required by law, the question becomes one of law for the court.

■ For proof of due execution of the alleged 1953–1963 will, HHMI relies on the oral testimony of an out-of-court declaration of Raymond Cook, now deceased, that Hughes "executed" his will. This statement would likewise be inadmissible as hearsay. *See Hartford Accident Indemnity Co. v. McCormick, supra.* The record further does not contain any evidence that this document was subscribed by two credible witnesses over the age of fourteen in Hughes' presence. We find this evidence insufficient to raise a fact issue to preclude summary judgment on the issue of due execution of the alleged 1953–1963 will.

■ Appellant contends further that since a diligent search has been made to determine the identity and whereabouts of the subscribing witnesses, the witnesses have been "accounted for." It cites numerous decisions which have permitted various forms of secondary evidence where testimony of attesting witnesses could not be obtained. In *Massey v. Allen,* 248 S.W. 1067 (Tex.Comm'n App.1923, judgment adopted), relied on by appellant, one witness could not remember signing the will but he admitted that the signature on the will was his signature. In *Jones v. Whitely,* 533 S.W.2d 881 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.), also cited by appellant, one witness testified that he did not

sign in the presence of the testatrix. However, another person who was allegedly present at the time the will was executed testified to the signature of the testatrix, and the daughter of another witness who had "lost his memory" testified to her father's signature. The court in *Jones* allowed such "secondary evidence" to prove that the will was executed with the requisite formalities.

Still, appellant has not cited to this Court any case or authority where secondary evidence of due execution was permitted on a showing that, because a diligent search to determine the identity of the attesting witnesses was made, their failure to testify has been "accounted for." In fact, in two cases cited by appellant for the proposition that the testimony is required only "if the production of such witnesses is possible," probate of the wills was denied because the witnesses' failure to testify was unexplained or the witnesses were otherwise considered "unaccounted for." *See In re Estate of Simms,* 442 S.W.2d 426, (Tex.Civ. App.—Texarkana 1969, writ ref'd n.r.e.), and *Aschenbeck v. Aschenbeck,* 62 S.W.2d 326 (Tex.Civ.App.—Austin 1933, writ dism'd). In a case relied on by appellees for their contention that due execution of the alleged wills cannot be proved, the Court specifically held that where the identity of the attesting witnesses was unknown, the evidence was insufficient to satisfy Probate Code § 59's substantive requirement.

In *Stewart v. Long,* 394 S.W.2d 25 (Tex. Civ.App.—Dallas 1965, writ ref'd n.r.e.), the testatrix' attorney produced a copy of what he swore was the original will he prepared. Two witnesses testified to the testatrix' declarations that the will had been executed and two witnesses testified that they saw the executed will, including the signatures of the subscribing witnesses. Proof was made of a diligent but unsuccessful search to find the original of the alleged will. However, no one could testify as to the identity of either of the attesting witnesses. The court found the evidence insufficient to

prove due execution and thus denied probate, holding:

> We agree with appellant-proponent that the record in this case is entirely devoid of any evidence (1) as to the age of the alleged attesting witnesses; (2) whether they were credible witnesses within the meaning of the Probate Code; and (3) whether they executed the same in the presence of the testatrix, and at her request.

394 S.W.2d at 29.

We agree with the above decision and hold likewise in the instant case.

■ Appellant asserts two final reasons why the probate court erred in ruling as a matter of law that the alleged 1925 will was not executed with the formalities and solemnities of law. First, HHMI claims that appellee Neff has twice admitted in open court that the 1925 will copy is a copy of the will Hughes executed leaving his estate to the Howard Hughes Medical Research Laboratories. The alleged judicial admission was made by an attorney of Neff in an unrelated proceeding in Nevada. In the recent case of *Thomas v. St. Joseph Hospital,* 618 S.W.2d 791 (Tex.Civ.App.— Houston [1st Dist.] 1981, no writ), the Court of Appeals held as follows:

> A judicial admission is a deliberate, clear, and unequivocal formal act made by a party, which if true and not modified or explained by him, would defeat his right of recovery or defense; the principle should be applied with caution. *Esteve Cotton Co. v. Hancock,* 539 S.W.2d 145, 157 (Tex.Civ.App.1976, writ ref'd n.r. e.); *see also Griffin v. Superior Insurance Co.,* 161 Tex. 195, 338 S.W.2d 415, 418–19 (1960). Statements made by a party or his attorney in the course of judicial proceedings which are not based on personal knowledge or are made by mistake or based upon a mistaken belief of the facts are not considered judicial admissions. *Gevinson v. Manhattan Construction Co. of Oklahoma,* 449 S.W.2d 458, 460 (Tex. 1969).

Furthermore, for a statement to be admissible as an exception to the hearsay rule, it must be made as a declaration of fact, as distinguished from a mere conclusion or opinion. *Isaacs v. Plains Transport Co.,* 367 S.W.2d 152 (Tex.1963); *Texas General Indemnity Co. v. Scott,* 152 Tex. 1, 253 S.W.2d 651 (1952); *Porter v. Thalman,* 516 S.W.2d 755 (Tex.Civ.App.—San Antonio 1974 affirmed in *Thalman v. Martin,* 635 S.W.2d 411 (Tex.1982); *Odom v. Lacy,* 405 S.W.2d 718 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.). The attorney who made this alleged judicial admission has subsequently explained, under oath, that his statements were made without personal knowledge and on the basis of the mistaken assumption that certain evidence would support the legal conclusion that the alleged 1925 will had been executed. Further, the attorney was not yet born when the will was allegedly executed in 1925. Appellant's contention is thus without merit.

■ Second, appellant contends that the attesting witnesses to the 1925 will have been accounted for because, "after thirty years, they are presumed dead." For this proposition, HHMI cites the case of *Harris v. Hoskins,* 2 Tex.Civ.App. 486, 22 S.W. 251 (1893, no writ). *Harris* is distinguishable because the document subscribed by two witnesses was a deed and not a will. *Harris* is thus not controlling. Nevertheless, we know of no case wherein a court has held that the attesting witnesses to a will are presumed dead after the lapse of the thirty years. If such a presumption did exist, it would necessarily be rebuttable so as to allow the opposing party to prove the contrary. *See* Tex.Rev.Civ.Stat.Ann. art. 5541 (Vernon Supp.1982) providing for a presumption of death as to any person absenting himself for seven (7) years, "unless proof be made that he was alive within that time." In the instant case such a presumption would be inapplicable since the attesting witnesses to either of the alleged wills have not been identified.

■ In this case, appellant is faced with two obstacles it must overcome. First, be-

cause the identity of the attesting witnesses is unknown, the proponent has a very difficult burden to meet in proving due execution. Second, because the alleged wills are lost, the question of the manner of proof of due execution is controlled not by a permissive § 84 "best evidence" rule as urged by appellant but by Probate Code § 85. That section, as enacted in 1956, unlike its predecessor and Probate Code § 84, provides that a written will which cannot be produced in court "*shall be proved* in the same manner as provided in the preceding Section . . . ." (emphasis supplied) The Court of Appeals in *In re Estate of Simms,* 442 S.W.2d 426 (Tex.Civ.App.—Texarkana 1969, writ ref'd n.r.e.), specifically held that Probate Code § 85 is mandatory. *See also Fuller v. Sechelski,* 573 S.W.2d 587 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). We agree and hold likewise. Accordingly, HHMI *must* prove due execution of either of the two alleged wills in a manner as provided in Probate Code § 84.

■ Probate Code § 84(b)(3) deals specifically with the matter of diligent searches. The statute provides in part:

. . . or, if it be shown under oath to the satisfaction of the court that, diligent search having been made, only one witness can be found who can make the required proof, then by the sworn testimony or affidavit of such one taken in open court, . . . to such signatures or handwriting.

The record does not contain any evidence that appellant has located any person who can testify to either the signature or handwriting of the testator or the signature or handwriting of either of the two attesting witnesses. Therefore, we find that the trial court did not err in holding as a matter of law that no fact issue existed regarding due execution of either of the two alleged wills. *Mossler v. Johnson,* 565 S.W.2d 952 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

b. *Contents by Live Witness*

■ Probate Code § 85 provides that the contents of a lost will "be substantially

proved by the testimony of a credible witness who has read it or heard it read." *See* *Strasburger v. Compton,* 324 S.W.2d 951 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.) and *Harris v. Robbins,* 302 S.W.2d 225 (Tex.Civ.App.—Amarillo 1957, no writ).

To prove the contents of the alleged 1953–1963 will, appellant relies on the deposition testimony of John Pettit. The witness testified that upon "glancing" at the document which Mr. Cook identified as Hughes' will, the witness' "impression" was that everything was left to HHMI. It is clear that Mr. Pettit did not read a will or have it read to him. In fact, Mr. Pettit did not testify that what he saw was the actual will as opposed to a photocopy or a carbon copy. It is unclear whether he remembers seeing Hughes' signature on the document and he cannot remember whether it was signed by any attesting witnesses. This testimony falls short of the requirement in Probate Code § 85 for "substantial" proof of the contents of a lost will. *See Harris v. Robbins, supra.* Accordingly, the trial court correctly found that no genuine issue of material fact exists as to the contents of the 1953–1963 will.

Appellant states that as to the alleged 1925 will, there is "abundant evidence" that the copy of the will found in Frank Andrews' files is a copy of the will Hughes allegedly executed in 1925. HHMI argues, citing *Miller v. Miller,* 285 S.W.2d 373 (Tex. Civ.App.—Eastland 1955, no writ), that the evidence it would offer concerning the copy raises a jury issue as to whether the copy is in fact a copy of the alleged 1925 will. Appellant then contends that if such a determination were made by a jury, proof of the will's contents in the manner provided in Probate Code § 85 would have "no logical application." For this contention appellant relies on the California case of *In re Moramarco's Estate,* 86 Cal.App.2d 326, 194 P.2d 740 (1948).

In *Miller,* the Court of Appeals in Eastland held that carbon copies of two alleged lost wills should have been admitted into evidence so as to bear upon the contents and due execution of the wills. However, in *Miller,* both attesting witnesses to the wills testified to witnessing the will and other persons testified that the copies were exact copies of the originals.

In *In re Moramarco's Estate,* a subscribing witness identified an instrument as an exact copy of a will that otherwise had been executed and attested. The Court merely said that, under the California statute, the contents of the will had been proved by that witness by her testimony that the copy was in fact a copy of the original she had witnessed. The Texas statute differs. It specifically requires proof that the witness read the will or heard it read. Moreover, the California Court of Appeals has questioned the decision. In *In Re Ruben's Estate,* 224 Cal.App.2d 600, 36 Cal.Rptr. 752, (1964), the Court of Appeals stated:

> "... we have considerable doubt that the holding in *Moramarco* can be reconciled with the clear mandate of the statute...."

■ Assuming, *arguendo,* that a true copy would be sufficient to prove contents, proof of due execution is still required. *See Sparkman v. Massey's Estate,* 297 S.W.2d 308 (Tex.Civ.App.—Dallas 1956, writ ref'd n.r.e.), wherein the court held that an application to probate an unexecuted carbon copy of a will would be tried as a case involving a lost will. *Miller* and *In re Moramarco's Estate* are thus distinguishable since in both cases, the witnesses could testify that the wills were executed with the formalities and solemnities required by law. In the instant case, the evidence of due execution is insufficient. Consequently, we need not decide whether a jury determination that a copy is in fact a copy of the actual will is sufficient to prove contents as required by Probate Code § 85.

■ Appellant would still assert, however, that even if the above determination were not found to be sufficient, Andrews' statements in the January and April, 1929

letters "constitute testimony from a credible witness who has seen the will and heard it read." We disagree. Andrews' statements are not *testimony* and the letters do not provide the "substantial" proof required by § 85 to prove contents of the alleged 1925 will. The trial court properly concluded that as a matter of law, no genuine issue of material fact exists as to the contents of the alleged 1925 will.

## STANDING/CY PRES

■■■ Texas Probate Code § 76 provides that an executor named in a will or any interested person may make application to probate a will. An interested person is an entity with some "legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired or benefited, or in some manner materially affected, by the probate of a will." *Logan v. Thomason*, 146 Tex. 37, 202 S.W.2d 212 (1947). Mere allegations of the existence of a prior lost will are not sufficient to show this legally ascertained pecuniary interest. *Hamilton v. Gregory*, 482 S.W.2d 287 (Tex. Civ.App.Houston [1st Dist.] 1972, no writ). While it is not necessary for the proponent to establish facts to entitle the will to probate, the proponent must show that "he was named as a beneficiary in a testamentary instrument executed with the formalities required by law, that is, a will." 482 S.W.2d at 289.

■■■ The record in the instant case establishes that there is no genuine issue of material fact regarding due execution of either of the alleged wills. Furthermore, appellant has no standing to probate the alleged 1925 will since the devise in that will specifically provides for the creation of a corporation in Harris County, Texas to conduct "a LABORATORY devoted to the discovery and development of ways, means, antitoxins, and specifics for the prevention and curing of the most serious diseases with which [this section] of this country may from time to time be afflicted, and shall be devoted to the search for and development of the highest scientific methods for the prevention and treatment of diseases." Because HHMI is a Florida charitable trust with different purposes, programs and trustees, appellant can claim no "interest" within the meaning of Probate Code § 76 under the provisions of the alleged 1925 will.

Further, HHMI contends that if the alleged 1953–1963 will is not established, it is the intended or *cy pres* beneficiary of the alleged 1925 will. Appellant would urge that it has a special interest in the performance of the trust different from that of the general public so as to establish its standing to proceed. This interest is based on HHMI's belief that it can best carry out Hughes' alleged charitable intent. Appellant cites no authority nor does it argue its case under this legal theory. We find appellant's contention is without merit.

■■■ The Texas Supreme Court has held that only the trustee of a charitable trust or the Attorney General may initiate a *cy pres* action. *Coffee v. William Marsh Rice University*, 403 S.W.2d 340 (Tex.1966). Third parties may intervene on the *cy pres* issue only if the named parties do not object. *Coffee, supra.*

■■■ The application of the *cy pres* doctrine is limited to situations where a testator's specific charitable purpose or the specific manner of disposition, "becomes impossible or impracticable or illegal to carry out . . . ." *Moody v. Haas*, 493 S.W.2d 555 (Tex.Civ.App.Houston [14th Dist.] 1973, writ ref'd). *See also Scott v. Sterrett*, 234 S.W.2d 917 (Tex.Civ.App.—Dallas 1950, writ ref'd n.r.e.). In the instant case, no legal or practical impediment exists to forming a medical research corporation in Harris County, Texas of the kind described in the alleged 1925 will. Consequently, the situation before us does not necessitate the application of the doctrine of *cy pres.*

■■■ We likewise find that appellant does not have a special interest in the trust

so as to establish its standing to become a substitute beneficiary. HHMI, as a stranger to the alleged 1925 will, has no special interest in the charitable trust distinct from that of the general public. *See Coffee, supra,* and *Lokey v. Texas Methodist Foundation,* 479 S.W.2d 260 (Tex.1972). We hold that the trial court did not err in finding there is no genuine issue of material fact that HHMI has no standing to probate either of the alleged wills.

## FULL FAITH and CREDIT

It is asserted by appellees Neff, McIntyre and Bond that because HHMI litigated the identical issues now before this Court in the Nevada courts, the Nevada court's judgment denying the alleged lost wills to probate should be given full faith and credit by the courts of this State. The pivotal question surrounding the effect of a judgment denying or admitting a will to probate concerns the domicile of the deceased. *See generally*: Probate Code §§ 95, 100 (a) & (b), 102, 103; *Jones v. Jones,* 301 S.W.2d 310 (Tex.Civ.App.—Texarkana 1957, writ ref'd n.r.e.). The United States Supreme Court has recently granted the State of California's motion for leave to file a complaint under the Supreme Court's original jurisdiction. The complaint asks the Court to finally decide where Hughes was domiciled at the time of his death. *State of California v. State of Texas, et al,* —— U.S. ——, 102 S.Ct. 2335, 72 L.Ed.2d 755 (1982). In light of this development and because of our holding with respect to the issues of the alleged lost wills and standing, we decline to decide whether the Nevada judgment is entitled to full faith and credit.

Appellant's sole point of error is overruled and the judgment of the trial court is affirmed.