Linda C. CASON and Billy Cason, Appellants,

v.

Earl D. TAYLOR, Appellee.

No. 10–00–087–CV.

Court of Appeals of Texas, Waco.

June 6, 2001.

Rehearing Overruled July 5, 2001.

W. Michael Read, The Law Office of W. Michael Read, Dallas, for appellant.

Steve Robertson, Robertson & Robertson, Clifton, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

We review an order admitting a lost holographic will to probate and setting aside the probate of an earlier formal will. We also review complaints about the trial judge's questioning of a witness. Finding no error, we will affirm.

## FACTS

Betty L. Ingram died May 15, 1997, at the age of 81. She was survived by her children, Linda C. Cason and Earl D. Taylor, who are her only heirs at law. Betty executed a formal, written will (the "formal will") on November 14, 1996, which Linda had admitted to probate as a muniment of title. The formal will gave Linda substantially all of Betty's estate. Earl filed suit in District Court against Linda, seeking to impose a constructive trust upon the assets of their deceased mother's estate which were in Linda's possession. After he discovered that Betty had made a later holographic will which could not be located, Earl filed an application to probate the holographic will in the County Court. That case was transferred to the District Court and consolidated with Earl's constructive-trust lawsuit.

Following a bench trial, the trial judge signed a judgment admitting the lost holographic will to probate. The judgment declared the terms of the lost will, set aside the prior probate of the formal will, and awarded attorney's fees to Earl. The trial court made findings of fact and conclusions of law.

Linda contests all but six of the findings. The pertinent findings of fact and conclusions of law are:

- The holographic will was written about April 1997.

- The holographic will was seen by two witnesses, Ardell Kincannon and Wendy Hervey, both of whom recognized the holographic will to be entirely in Betty's handwriting.

- Ardell and Wendy also heard Betty read the holographic will and remembered its contents.

- The holographic will stated as follows:

 "Dear Children: I want my house in Irving to go to Earl. I want my car to go to Earl. I want my house in Meridian to go to Linda. I want the lake property to go to Lenny. I want the rest of my estate divided equally be-

tween Linda Carol and Earl. Betty Ingram."

- In the holographic will, "Linda" and "Linda Carol" refer to Linda Cason, and "Earl" refers to Earl Taylor.
- The holographic will was kept in the personal possession of Betty until her death. The original of the holographic will was kept in Betty's purse, and a copy of it was kept in a chest of drawers in Betty's home.
- At all times material to this lawsuit, Linda and her husband Bill Cason had keys and ready access to Betty's home.
- Betty died at Linda's home. Immediately upon Betty's death, Linda's son, Bobby Cason, took possession of Betty's purse and, at the instruction of Linda, hid it from Earl.
- Linda admitted to Earl and to Greg Taylor the existence of the holographic will shortly after Betty's death.
- The holographic will revoked the prior formal will.
- Linda surreptitiously withdrew the holographic will from Betty's house after her death.
- The holographic will cannot be produced in court because Linda took control of it and now denies its existence.
- Betty never evidenced any intent to revoke the holographic will.
- Linda had access to the holographic will and would benefit if it were not found, because the formal will which was previously admitted to probate gave Linda a far greater share of Betty's estate than did the holographic will.
- After execution of the holographic will, Betty continued to express an intent that her children share equitably in her estate.

- Earl used diligence in attempting to locate and produce the holographic will.
- Betty was over eighteen years of age and of sound mind when she executed the holographic will.
- Betty did not revoke the holographic will.
- The holographic will is entitled to be admitted to probate.
- Because the formal will previously admitted to probate was revoked by the holographic will, the formal will and its probate are set aside.

## ISSUES ON APPEAL

Linda brings eleven points of error on appeal. We will discuss them as follows: 1) points 1, 2, 3, 4, 6, 7, 8 and 9 attack the legal and factual sufficiency of the evidence to support findings of fact on which Earl had the burden of proof at trial, 2) points 10 and 11 claim the evidence conclusively or by great weight and preponderance establishes issues on which Linda had the burden of proof at trial, so that the trial court's findings of fact are erroneous, and 3) point 5 asserts that the trial court abused its discretion in questioning a witness.

## STANDARDS OF REVIEW

Before we begin our discussion of the issues, we set forth the standards of review by which we will be guided.

### Sufficiency of the Evidence

■■■ The trial court's findings of fact after a bench trial are reviewable for legal and factual sufficiency by the same standards applied in reviewing the evidence supporting a jury's answer. *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex.App.—Waco 1997, writ denied). We review a trial court's conclusions of law de novo. *Benedictine Sisters of the Good*

*Shepherd v. Ellison,* 956 S.W.2d 629, 631 (Tex.App.—San Antonio 1997, pet. denied). A conclusion of law will be set aside if it is erroneous as a matter of law. *Id.*

### a. When party not having burden of proof attacks a finding

■ When the complaining party raises a "no-evidence" or "legally-insufficient-evidence" point challenging the legal sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, the reviewing court must overrule the challenge if, considering only the evidence and inferences which support the finding in the light most favorable to the finding and disregarding evidence and inferences to the contrary, any probative evidence supports it. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.* "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of [the fact's] existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992).

■ A no-evidence point can be sustained only when the record reveals one of the following: (1) a complete absence of evidence of a vital fact; (2) rules of law or rules of evidence bar the appellate court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex.1990).

■■ In reviewing an "insufficient-evidence" point challenging the factual suffi-

ciency of the evidence to support a finding that favors the party who had the burden of proof on that finding, the reviewing court may set aside the finding only if a review of all the evidence, both for and against the finding, demonstrates that the finding is clearly wrong and manifestly unjust. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). Reversal could occur because the finding was based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof. William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515, 519 n. 11 (1991).

### b. Complaint by party having burden of proof

■ When the party who had the burden of proof on an issue in a bench trial complains about the absence of a finding of fact by the court, we treat it as a refusal to find the fact from a preponderance of the evidence. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). If that party raises a "conclusive-evidence" or "matter-of-law" point, *i.e.,* asserts that the evidence conclusively established the critical fact such that the finding was established as a matter of law, the reviewing court must first examine the record for evidence that supports the court's refusal to find that fact, while ignoring all evidence to the contrary. *See id.; Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982). If we find evidence that supports the court's refusal to find the fact, the inquiry ends; but if we find no evidence to support the refusal, then the entire record must be examined to determine if the contrary proposition is established as a matter of law. *See Sterner,* 767 S.W.2d at 690. If so, the point of error will be sustained.

█ When the party who had the burden of proof on an issue complains about the court's refusal to find a fact in a "contrary to the great weight and preponderance of the evidence" point, *i.e.,* asserts that the court's refusal to find the fact is contrary to the evidence, the reviewing court must overrule the complaint unless, considering all the evidence, the refusal is contrary to the great weight and preponderance of the evidence. *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex.1988).

### Questions by the Judge

█ When reviewing complaints about the trial judge's questioning of a witness, we will apply an abuse of discretion standard of review. *Born v. Virginia City Dance Hall and Saloon,* 857 S.W.2d 951, 957 (Tex.App.—Houston [14th Dist.] 1993, writ denied) ("For the purpose of eliciting evidence that has not otherwise been brought out, the judge may put competent and material questions to a witness, and where anything material has been omitted, it is sometimes his duty to examine a witness.") (jury trial). The judge should not, however, become so entangled in questioning witnesses as to become an advocate for one of the parties, thereby precluding the rendition of objective findings. *In re R.P.,* 37 S.W.3d 76, 79 (Tex.App.—San Antonio 2000, no pet.) (citing *In re S.J.,* 940 S.W.2d 332, 338 (Tex.App.—San Antonio 1997, no writ)) (bench trial). While the trial judge should not act as an advocate for one of the parties, his role is more than that of a mere umpire in the performance of his duty to administer justice. *Henderson–Bridges, Inc. v. White,* 647 S.W.2d 375, 377 (Tex.App.—Corpus Christi 1983, no writ) (bench trial). The determination of whether a trial judge abused his discretion is a question of law. *Stephens v. Stephens,* 877 S.W.2d 801, 804 (Tex.App.—Waco 1994, writ denied).

### DISCUSSION OF ISSUES

We now turn to a discussion of the issues Linda raises on appeal.

### Points of error 1, 2, 3, 4, 6, 7, 8 and 9

█ In eight points of error, Linda claims that the court's conclusion that the lost holographic will is entitled to probate and that it revoked the prior formal will is based on findings of fact which are not supported by legally and factually sufficient evidence. As the proponent of the holographic will, Earl had the burden of proof on these fact issues. *Pipkin v. Dezendorf,* 618 S.W.2d 924, 925 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (proponent of a will has the burden of supplying evidence necessary for its admission to probate).

#### a. Testamentary intent

Linda claims there is "no evidence" in the record, or alternatively the evidence is "insufficient," to support a finding that Betty wrote the holographic will with testamentary intent or that the holographic will contained language showing such intent.

█ A document is not a will unless it is executed with testamentary intent. *Ayala v. Martinez,* 883 S.W.2d 270, 272 (Tex.App.—Corpus Christi 1994, writ denied) (citing *Hinson v. Hinson,* 154 Tex. 561, 280 S.W.2d 731, 733 (1955)). The intent required is to make a revocable disposition of property to take effect after the testator's death. *Id.* Intent is to be determined by the language used in the will. *Id.* (citing *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885, 888 (1960)). Extrinsic evidence may be admitted to explain the decedent's meaning which is set forth in the words of the will. *Id.*

A recital that "[i]t is my will and desire" has been held to be expressive of testa-

mentary intent. *Matter of Rogers,* 895 S.W.2d 375, 377 (Tex.App.—Tyler 1994, writ denied). In *Ayala,* the court upheld a finding of testamentary intent, where the handwritten instrument, written in a hospital where the maker was about to undergo a serious operation, contained the words "so it will be divided up equally between you." *Ayala,* 883 S.W.2d at 272. The court found that such language implied a future division of property. *Id.*

### 1. *Legal sufficiency*

Here, the judgment set out the court's finding of Betty's holographic will's contents:

"Dear Children: I want my house in Irving to go to Earl. I want my car to go to Earl. I want my house in Meridian to go to Linda. I want the lake property to go to Lenny. I want the rest of my estate divided equally between Linda Carol and Earl. Betty Ingram."

■ As in *Ayala,* we find that the language Betty used in the holographic will, *i.e.,* "divided equally" and "to go to," indicates that she intended to make a revocable disposition of her property which would take effect after her death. As a result, there is more than a scintilla of evidence to support findings that Betty wrote the holographic will with testamentary intent and that the holographic will contained language showing such intent. *Browning–Ferris, Inc.,* 865 S.W.2d at 928.

### 2. *Factual sufficiency*

Alternatively, Linda claims the evidence is "insufficient" to support the court's finding about testamentary intent. For support, Linda points to Ardell's testimony on cross examination:

Q. Okay. Did she explain to you then that this document in her understanding, in her mental state, was not a will, but a letter—

A. No. She knew it was a letter.

Q. Okay. So she did not convey to you or communicate to you an understanding from her mental state that she was writing out another will?

A. No. She wasn't writing another will, she was just merely writing a letter.

Q. She was not writing out another will?

A. She was writing out a letter.

Q. Did she communicate to you—did she say I'm going to write this letter, I am not going to write another will, I am going to write a letter—

A. No. She just mentioned the letter, will wasn't mentioned.

However, prior to this testimony, Ardell stated the following:

Q. Did [Betty] have anything to say about this document and the prior will together?

A. Yes.

A. The letter would supersede the will.

Wendy also testified that Betty stated that the letter would supersede or override her formal will. In addition, both Wendy and Ardell testified to the holographic will's contents. Both stated that Betty used language such as "divided equally" and "to go to" in making her dispositions.

Linda also says that the testimony of Diane Hightower, the attorney who prepared Betty's formal will, was "uncontroverted" and binding on the trial court. Hightower testified that she had suggested to Betty that if she wanted to leave "some personal property of sentimental value" to Earl she could do so by a letter of instruction to the executor. Hightower claims, however, that Betty was aware that such a letter would lack testamentary effect and would be unenforceable as a will. Linda argues that such testimony was relevant to Betty's "state of mind," and therefore, it is

"uncontroverted" that Betty did not have testamentary intent in writing the letter.

 Hightower's testimony, although tending to contradict the court's finding, does not conclusively establish lack of testamentary intent. The trial court, as the factfinder, was free to disregard it. *Tiller v. Martinez*, 974 S.W.2d 769, 777–78 (Tex.App.—San Antonio 1998, pet. dism'd w.o.j.). We find factually sufficient evidence to support the trial court's finding of testamentary intent. *Garza*, 395 S.W.2d at 823. Furthermore, the trial court did not err in failing to accept Hightower's testimony as negating Betty's testamentary intent. Points 1 and 7 are overruled.

### b. Lost holographic wills

 To probate a lost will, the proponent must establish three elements: 1) proof that the will was duly executed; 2) proof of the cause of the will's non-production and of the proponent's inability to produce it by reasonable diligence; and 3) substantial proof of the contents of the will by a credible witness. TEX.PROB.CODE ANN. § 85 (Vernon 1980); *Coulson v. Sheppard*, 700 S.W.2d 336, 337 (Tex.App.—Corpus Christi 1985, no writ).

 To show a valid holographic will, the proponent has the burden of proving that the instrument is wholly in the testator's handwriting. *Trim v. Daniels*, 862 S.W.2d 8, 10 (Tex.App.—Houston [1st Dist.] 1992, writ denied). "If not self proved .... a will wholly in the handwriting of the testator may be proved by two witnesses to his handwriting, which evidence may be by sworn testimony or affidavit taken in open court." *Lopez v. Hansen*, 947 S.W.2d 587, 589 (Tex.App.—Houston [1st Dist.] 1997, no writ). A signature by initials is sufficient to execute the instrument as a will if the will is testa-

mentary in character, and the will need not be dated. *Trim*, 862 S.W.2d at 10.

As a result, to support the trial court's findings of a lost holographic will, the evidence must be sufficient to: 1) prove that the will was wholly in Betty's handwriting and signed by her; 2) prove the cause of the will's non-production and of Earl's inability to produce it by reasonable diligence; and 3) provide substantial proof of the contents of the will by a credible witness. TEX.PROB.CODE ANN. § 85; *Coulson*, 700 S.W.2d at 337.

### 1. The will was wholly in Betty's handwriting and signed by her

Linda claims that there was "no evidence" that witnesses Ardell or Wendy had previous knowledge of Betty's handwriting or that the instrument was signed by Betty. Alternatively, Linda argues that the evidence is "insufficient" to support a finding that Wendy saw the holographic will.

### A. Legal sufficiency

 Ardell testified that the instrument was in Betty's handwriting and was signed by her:

Q. It's all in [Betty's] handwriting?

A. All in her handwriting, yes, sir.

Q. Did she sign it?

A. Yes, [Betty] did.

Wendy also testified:

Q. And in looking at the letter could you tell whether or not it was in [Betty's] handwriting?

A. Yes, sir. I could tell. It looked like it was in [Betty's] handwriting.

We find more than a scintilla of evidence to support the finding that the holographic will was wholly in Betty's handwriting and signed by her. *Browning–Ferris, Inc.*, 865 S.W.2d at 928.

### B. Factual sufficiency

Linda also claims that the evidence is "insufficient" to support the court's finding that Wendy saw the holographic will. Wendy testified that Betty read her holographic will to her and Ardell on April 19 in Irving, Texas. However, phone records indicate that calls were made and accepted from Betty's home in Meridian, Texas on the 19th. After trial, the trial judge stated in a letter that he was "satisfied that [Betty] was not with [Ardell] on the weekend of April 19." As a result, Linda argues that Wendy's testimony about Betty's handwriting or whether she signed the lost holographic will cannot be given any weight.

The trial court found that the holographic will was seen by two witnesses, Ardell and Wendy, both of whom recognized it to be entirely in Betty's handwriting. Each testified that she heard Betty read it and remembered its contents. Both Ardell and Wendy testified that Betty had stayed with Ardell during the week before and through the weekend of April 19 in Irving. Wendy testified that during this time period she visited Betty at Ardell's home. On cross examination, Ardell stated that Betty "spoke about [the holographic will on] several dates during that week," including the 15th and 16th.

The trial court acting as the factfinder has a right to believe or disbelieve any portion of the testimony. *Matter of Marriage of Bertram*, 981 S.W.2d 820, 828 (Tex.App.—Texarkana 1998, no pet.) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986)). It is the trier of fact who judges the credibility of the witnesses and the weight to be given their testimony, and it may resolve or reconcile conflicts in the testimony, accepting or rejecting such portions thereof as it sees fit. *Id.*

Here, because there was testimony that Betty stayed with Ardell the week before April 19, and testimony that Wendy visited Ardell's home during this time, the trial court could have reconciled the testimony concerning the dates on which the events occurred. We find factually sufficient evidence to support the finding that Wendy saw the holographic will and heard it read. *Garza*, 395 S.W.2d at 823. Points 2 and 4 are overruled.

### 2. The cause of the will's non-production and of Earl's inability to produce it by reasonable diligence

According to the trial court, the holographic will could not be produced because Linda surreptitiously took control of it and now denies its existence. Linda claims there is "no evidence" in the record, or alternatively the evidence is "insufficient," to support such findings. Linda argues the evidence does not show that she had access to the holographic will, or alternatively, if she did have access, it was only to a copy.

#### A. Legal sufficiency

Ardell testified that Betty kept the original of the holographic will in her purse and a copy in a chest of drawers in Betty's home. Linda testified to having gone through the drawers and to having found a will. According to Bobby Cason, Linda's son, upon Betty's death he took possession of Betty's purse and, on Linda's instruction, hid it from Earl. Based on this evidence, we find more than a scintilla of evidence to support the trial court's finding that the holographic will cannot be produced because Linda surreptitiously took control of it and now denies its existence. *Browning–Ferris, Inc.*, 865 S.W.2d at 928.

#### B. Factual sufficiency

Helen Canonico confirmed that Bobby was instructed by Linda to remove the purse. Helen claims that Bobby called her and said, "Helen, don't worry about

[Betty's] purse. . . . Mother called me from Tulsa and told me to hide the purse from Uncle Earl." In addition, according to Wendy, Betty said that Linda went through Betty's chest of drawers shortly before Betty's death and found the copy of the holographic will. We find factually sufficient evidence to support the finding that Linda had access to both the holographic will in Betty's purse, as well as the copy in her chest of drawers. *Garza,* 395 S.W.2d at 823. Points 3 and 9 are overruled.

### 3. Substantial proof of the contents of the will by a credible witness

Section 85 of the Probate Code provides that the contents of a lost will must "be substantially proved by the testimony of a credible witness who has read it or heard it read." TEX.PROB.CODE ANN. § 85; *Howard Hughes Medical Institute v. Neff,* 640 S.W.2d 942, 951–52 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (citing *Harris v. Robbins,* 302 S.W.2d 225, 229 (Tex.Civ.App.—Amarillo 1957), *overruled on other grounds by, Matter of Estate of Glover,* 744 S.W.2d 939, 940 (Tex.1988)). In *Harris,* the court stated:

> While it is not necessary to establish all of the contents of an alleged lost will literally or verbatim, it is necessary to establish its material contents with some degree of certainty in order to be able to pass title to the property devised and such is particularly true of land. The statutory requirements for substantial proof of the contents of an alleged lost will have not been satisfied so long as the court is left in confusion about the real provisions of the will or how to vest title to the property involved.

*Harris,* 302 S.W.2d at 229.

Here, the judgment and a finding of fact set out the contents of the holographic will as follows:

"Dear Children: I want my house in Irving to go to Earl. I want my car to go to Earl. I want my house in Meridian to go to Linda. I want the lake property to go to Lenny. I want the rest of my estate divided equally between Linda Carol and Earl. Betty Ingram."

Linda claims that the evidence is legally and factually insufficient to support the trial court's finding. According to Linda, the witnesses were inconsistent with their versions of the will's contents and the will did not make any sense because it devised her a house which she already owned.

### A. Legal sufficiency

The trial court found that the holographic will was seen by two witnesses, Ardell and Wendy. Ardell and Wendy heard Betty read the holographic will and testified that they remembered its contents. On direct examination, Ardell testified:

Q. What did [the holographic will] say?

A. Well, to the best of my knowledge it started out dear children.

Q. All right.

A. And she said in the event of my death I would like to have the properties—let's see, how did she say it?—she would like to have the car go to Earl, the house in Irving to Earl. Linda got the house in Meridian and everything, all—whatever was left over to be split down the middle between both them equally.

Q. Was Lennie mentioned?

A. No, but she talked to me about Lennie before. In fact, Lennie—come to think of it, you know, that's been so long ago—come to think of it maybe Lennie was mentioned, because I know she wanted him to have the lake property.

THE COURT: I'm trying to get this down. I just want to be sure. In the

event of my death the house in Irving should go to Earl, and the car to Earl, house in Meridian to Linda, balance split equally?

Ardell: That's correct.

THE COURT: Then you say there was something about Lennie?

Ardell: We talked about Lennie before. I'm not sure if that was in the—in the document, I believe it was, leaving her lake property to her grandson Lennie.

On cross examination and then on redirect, Ardell's testimony about the contents of the will was consistent with her testimony on direct examination.

We find more than a scintilla of evidence to support the trial court's findings that the contents of the lost will were "substantially proved by the testimony of a credible witness who has read it or heard it read." *Howard Hughes Medical Institute*, 640 S.W.2d at 951–52; *Browning–Ferris, Inc.*, 865 S.W.2d at 928.

### B. Factual sufficiency

Wendy testified on direct examination:

Q. And what was Betty telling [you] about this document? What was she saying?

A. She was telling mother that Earl was to get her house in Irving, Lennie was supposed to get the lake property, Linda had the house in Meridian and anything monetarily that was left over should be divided equally between Earl and Linda.

Because the contents of the holographic will were substantially proved by consistent testimony of two credible witnesses, we find the trial court's finding as to the contents of the will was not based on weak or insufficient evidence or overwhelmed by Linda's contrary proof. William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. at 519 n. 11. There is factually

sufficient evidence to support the trial court's finding. *Garza*, 395 S.W.2d at 823. Point 6 is overruled.

### c. Revocation

Linda claims there is "no evidence" in the record, or alternatively the evidence is "insufficient," to support the trial court's finding that the holographic will revoked Betty's prior formal will. Section 63 of the Probate Code states in pertinent part that, "No will ... shall be revoked, except by a subsequent will, codicil, or declaration in writing, executed with like formalities." Tex.Prob.Code Ann. § 63 (Vernon 1980). Linda argues that the lost holographic was not executed "with like formalities" and did not contain a necessary "revocation clause."

While the statute says that the subsequent instrument must be executed "with like formalities," this does not mean that a typewritten, attested will can be revoked only by a later typewritten, attested instrument, or that a holographic will can be revoked only by a later holographic instrument. *In re Estate of Brown*, 507 S.W.2d 801, 805–06 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.). A holographic will can revoke an attested will, and vice versa, so long as the revoking instrument is in accordance with the legal requirements. *Id.* at 806 (citing *Brackenridge v. Roberts*, 114 Tex. 418, 267 S.W. 244, 247 (1924)).

The standard way to revoke a will is by executing a new will that contains an expressed revocation clause, *i.e.*, "I revoke all earlier wills and codicils." *Burton v. Bell*, 380 S.W.2d 561, 569 (Tex. 1964). However, if a later will makes a complete disposition of the testator's property, it revokes all prior wills by implication. *Lisby v. Richardson's Estate*, 623 S.W.2d 448, 449 (Tex.App.—Texarkana 1981, no writ); *Baptist Foundation of Texas v. Buchanan*, 291 S.W.2d 464, 472 (Tex.

Civ.App.—Dallas 1956, writ ref'd n.r.e.). The question of revocation is left to the factfinder. *Lisby*, 623 S.W.2d at 451.

■ We have already found legally and factually sufficient evidence to support the findings that Betty's handwritten instrument met the legal requirements for holographic wills. Therefore, Betty's holographic will was executed "with like formalities" and was capable of revoking the her prior formal will. *In re Estate of Brown*, 507 S.W.2d at 805–06. Because the holographic will does not contain an express "revocation clause," we must determine whether the evidence is sufficient to support the finding that the holographic will revoked the prior formal will by implication. *Lisby*, 623 S.W.2d at 449.

### 1. Legal sufficiency

As stated before, the judgment and findings set out the holographic will's contents based upon the testimony of two witnesses, Ardell and Wendy. The will read:

"Dear Children: I want my house in Irving to go to Earl. I want my car to go to Earl. I want my house in Meridian to go to Linda. I want the lake property to go to Lenny. *I want the rest of my estate divided equally* between Linda Carol and Earl. Betty Ingram."

(emphasis added). The trial court also found that: 1) the holographic will revoked the prior formal will, 2) Betty did not revoke the holographic will, and 3) because the formal will previously admitted to probate was revoked by the holographic will, the formal will and its probate should be set aside.

■ We find that the dispositions in the holographic will, together with the phrase "*I want the rest of my estate divided equally*," make a complete disposition of Betty's property. *Lisby*, 623 S.W.2d at 449. As a result, there is more than a scintilla of evidence to support the finding

that the holographic will revoked the prior formal will by implication. *Id.; Browning–Ferris, Inc.*, 865 S.W.2d at 928.

### 2. Factual sufficiency

■ Ardell and Wendy testified as to whether Betty's holographic will revoked her prior formal will. On direct examination, Ardell stated:

Q. Did [Betty] have anything to say about this document and the prior will together?

A. Yes.

Q. What was that?

A. The letter would supersede the will.

Wendy testified to the events which led up to her seeing the holographic will. Wendy stated on direct examination:

Q. Describe the document that you saw.

A. Okay. I saw [Betty] take out of her purse a white piece paper. It had writing. I did not get to read it. She was referring to it as the letter that would supersede or override her will—

Thus, Ardell's and Wendy's testimony provided the trial court with additional evidence that Betty intended the holographic will to revoke the prior formal will. We find factually sufficient evidence to support the trial court's finding. *Garza*, 395 S.W.2d at 823. Point 8 is overruled.

### d. Summary

Having found legally and factually sufficient evidence to support the trial court's findings, points 1, 2, 3, 4, 6, 7, 8 and 9 are overruled.

### Points of error 10 and 11

In two points, Linda claims the trial court erred in not finding: (a) that Betty's prior formal will was her last will and testament (point 10), and (b) that Earl's cause of action was prohibited by the prior

formal will's "No Contest Clause" (point 11).

▆▆▆ Addressing the complaint about Betty's formal will being her last will, we have found in response to Linda's points 1, 2, 3, 4, 6, 7, 8 and 9, legally and factually sufficient evidence to support the trial court's findings that Betty intended the lost holographic will to be her last will which revoked her prior formal will. As a result, there is evidence which supports the trial court's refusal to find that Betty's formal will was her last will. *Sterner*, 767 S.W.2d at 690. In addition, considering all the evidence, we find that this refusal to find is not contrary to the great weight and preponderance of the evidence. *Cropper*, 754 S.W.2d at 651. Point 10 is overruled.

▆▆▆ Linda also claims the trial court erred in not finding that Earl's cause of action was prohibited by Betty's formal will's "No Contest Clause." Betty's prior formal will contained a no-contest clause, sometimes referred to as an "in terrorem" clause, which, by its terms revokes any bequest to any beneficiary who contests the will. If the holographic will had not been admitted to probate, the "in terrorem" clause would have operated to reduce Earl's share of Betty's estate from $100 to nothing, unless the will was "contested" in good faith and with probable cause. However, if a will containing a "No Contest Clause" is denied probate, the clause is rendered irrelevant. *Tieken v. Midwestern State Univ.*, 912 S.W.2d 878, 887 (Tex. App.—Fort Worth 1995, no writ). Because Betty's prior formal will was revoked by the subsequent holographic will, the "No Contest Clause" is rendered irrelevant. *Id.* We find some evidence which supports the trial court's refusal to find that Earl's cause of action was prohibited by Betty's formal will's "No Contest Clause." *Sterner*, 767 S.W.2d at 690.

As to point 11, Linda does not specifically point out why the trial court's refusal to find is "contrary to the great weight and preponderance of the evidence." *Cropper*, 754 S.W.2d at 651. After considering all the evidence on this point, we find that the court's refusal is not manifestly unjust, does not shock the conscience, and does not clearly demonstrate bias. *See id.* Point 11 is overruled.

### Point of error 5

Linda contends that the trial judge committed error by abandoning his proper role of impartiality and assuming the role of an advocate in his interrogation of a witness. Earl responds that any objection to, or error in questioning by, the trial judge was not preserved for appeal. Linda complains of the following questions by the judge.

THE COURT: Mrs. Kincannon, I have got a couple of areas that I want to follow up with you on.

A. All right.

Q. First you have mentioned, and I don't know, I think a couple of three times about we made referring to this letter or this document?

A. Uh-huh.

Q. What do you mean when you say "we"?

A. Mrs. Ingram and I.

Q. Did you help write any of it?

A. She asked me some about the spellings and way the words things, so in the way yes, not—

Q. You didn't write any of it?

A. No. No.

Q. It's all in her handwriting?

A. All in her handwriting, yes, sir.

Q. Did she sign it?

A. Yes, she did.

THE COURT: All right. Thank you. You may step down.

Linda then objected to the court's questioning of the witness about whether or not Betty signed the holographic will. Linda claimed that neither side had presented such evidence. The court overruled the objection.

Although questionable, we will presume that Linda's objection was sufficient to preserve her point for appeal. *See Aluminum Chemicals (Bolivia), Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 69 (Tex.App.—Texarkana 2000, no pet.) (An objection is generally not timely if made after the evidence has been admitted.).

■ For the purpose of eliciting evidence which has not otherwise been brought out, or to clarify testimony, it is ordinarily proper for a judge to put competent and material questions to a witness either on the examination in chief or on cross-examination, and where anything material has been omitted, it is sometimes his duty to examine a witness. *Born*, 857 S.W.2d at 957. We do not find that the judge assumed the role of an advocate for Earl. *See id.; In re R.P.*, 37 S.W.3d at 79. The questions asked were open-ended, did not reflect any bias or prejudice, and were asked for clarity. Thus, we hold that the trial judge did not abuse his discretion in examining the witness. *Born*, 857 S.W.2d at 957. Point 5 is overruled.

## CONCLUSION

Having overruled Linda's eleven points of error, we affirm the judgment.