

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-11-00146-CV

_____

**IVA JEAN CARRINGTON,**

                                                                                        **Appellant**

 **v.**

**ANTHONY CARRINGTON,**
**DORYL GOFFNEY AND ROSA GOFFNEY,**

                                                                                        **Appellees**

_____

**From the 12th District Court**
**Walker County, Texas**
**Trial Court No. 25,262**

_____

## MEMORANDUM  OPINION

_____

In this appeal, appellant, Iva Jean Carrington, challenges the trial court's final judgment awarding a 5.18-acre tract of land to appellees, Doryl and Rosa Goffney.  In five issues, Iva argues that the trial court erred in:  (1) concluding that she does not have a claim to the land under color of title; (2) concluding that she did not adversely possess the land in question; (3) declaring that the Goffneys were good-faith purchasers of the land; (4) concluding that the Goffneys owned the land in fee simple; and (5)

determining that she breached a contract she had with her brother, co-appellee Anthony Carrington. We affirm.

## I. BACKGROUND

This action centers on a dispute regarding a 5.18-acre tract of land in New Waverly, Texas. On December 17, 1966, Clyde and Emma Lois Carrington, Iva and Anthony's parents, obtained a warranty deed to the land in question. The Carringtons built a house on the land, which was used as the family's residence.

On May 3, 1983, Clyde and Emma contracted with Major United Steel Siding Corporation ("Major") for the installation of: (1) vinyl siding on the house; (2) two wood doors and two aluminum storm doors; (3) aluminum screens; (4) shutters; and (5) a new front porch and cement steps. Using the land as collateral for the aforementioned projects, Clyde and Emma entered into a "Contract for Labor and Materials and Trust Deed" with Major.

According to Anthony, Clyde received notice sometime in 1994 that Ronald J. Sommers, the Liquidating Trustee for Major, intended to foreclose on Major's lien because the Carringtons had failed to pay for all of the work done to the property.[1] However, Clyde passed away on February 26, 1994 without leaving a will, and Major subsequently foreclosed on its lien on August 2, 1994.

Despite the foreclosure, Anthony continued to live on the property. Shortly after the foreclosure, Anthony decided that he wanted to buy the property. He began

---

[1] At trial, Emma denied receiving notice from Major about its intent to foreclose on its lien.

making installment payments to Major in the amount of $265 per month. After Anthony had paid the agreed-upon price of $12,500, on May 15, 1996, Major issued a "No Warranty Deed," which conveyed the property to Anthony. After receiving the deed from Major, Anthony believed that he owned the property free and clear and subsequently had the deed recorded in the County Clerk's Office of Walker County, Texas.

As the purported owner of the property, Anthony allowed other family members to live on the land. In November 1996, Iva moved her mobile home onto the land. According to Anthony, Iva lived on the land subject to his permission. Then, on April 5, 2007, Iva contracted with Anthony for the sale of one acre of the 5.18-acre tract of land to Iva.[2] The contract specified that Iva intended to build a "Jim Walters Home" on the one-acre tract and that she was to pay Anthony $3,000 for the land. She made an initial payment of $150 and agreed to pay $200 a month until the contract price was met. Iva admitted at trial that she only made two $100 payments to Anthony—leaving $2,650 remaining on the balance owed—and that she never did finish paying the remaining balance to Anthony.

In the meantime, Iva contracted with Jim Walter Homes, Inc. to build a home on the land where she resided. Jimmy Holder, purportedly a former employee of Jim Walter Homes, sent Iva a handwritten letter dated June 8, 2010, indicating that, in February or March 2007, he ran a title search on the property and that he "could not get

---

[2] Iva alleged that Anthony also contracted with their brother, Willie Carrington, for the sale of a one-acre tract.

a clear title for our customers to build a home with financing. The chain of title . . . had serious defects."

After Iva failed to make the required payments under the contract, Anthony sent her an eviction notice, stating that the property had been sold and giving her three days to remove her mobile home. Iva refused to leave.

On December 1, 2009, Anthony sold the entire 5.18-acre tract to the Goffneys. The Goffneys procured title insurance. In addition, they had Sam Houston Landmark Title Company conduct a title search on the property. The title search indicated that Anthony had been the owner of the property since May 1996.

In mid 2010, the Goffneys filed lawsuits to evict Iva and her family from the property. These lawsuits were dismissed. The instant case, filed by Iva on September 3, 2010, alleged causes of action against Anthony for breach of contract and deceptive trade practices. She also alleged a trespass to try title claim, asserting that she acquired title to the property by adverse possession. At trial, Iva tendered into evidence a letter written by Emma, which stated that each of the five children in the family were to receive one acre of land. This letter was notarized on June 9, 2010; however, it was not recorded in the county land records. In addition, she sought to enjoin Anthony and the Goffneys from interfering with her peaceful use and enjoyment of the property. The Goffneys filed an answer generally denying all of the claims made by Iva and asserted counterclaims for trespass.[3]

---

[3] Anthony testified and represented himself at trial.

The trial court conducted a bench trial on Iva's claims and subsequently concluded that: (1) the Goffneys should recover exclusive right, title to, and possession of the property; (2) Iva should be divested of any title or right of possession to the property; (3) Iva's breach of contract and DTPA claims should fail; and (4) the Goffneys should take nothing on their counterclaims. At the urging of Iva, the trial court entered numerous findings of fact and conclusions of law. This appeal followed.

## II. STANDARD OF REVIEW

The trial court's findings of fact after a bench trial are reviewable for legal and factual sufficiency by the same standards applied in reviewing the evidence supporting a jury's answer. *Cason v. Taylor*, 51 S.W.3d 397, 403 (Tex. App.—Waco 2001, no pet.). We review a trial court's conclusions of law de novo. *Id.* A conclusion of law will be set aside only if it is erroneous as a matter of law. *Id.*

Here, Iva appears to challenge the legal and factual sufficiency of the trial court's findings, and as the plaintiff, she had the burden to prove her claims in the trial court. When a party attacks the legal sufficiency of an adverse finding on an issue on which it had the burden of proof, it must demonstrate that the evidence establishes, as a matter of law, all vital facts in support of that issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We must first examine the record for probative evidence that supports the trial court's finding, while ignoring all evidence to the contrary unless a reasonable fact-finder could not. *Id.*; *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If there is no evidence to support the trial court's answer, then we must examine the entire record to see if the contrary proposition is established as a matter of law. *Dow*

*Chem Co.*, 46 S.W.3d at 241. The issue should be sustained only if the contrary proposition is conclusively established. *Id.*

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. We must consider and weigh all of the evidence, and we can set aside the judgment only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Fact findings are not conclusive when, as in this case, a complete reporter's record appears in the record if the contrary is established as a matter of law or if there is no evidence to support the finding. *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

In a bench trial, the trial court judges the credibility of the witnesses, determines the weight to be given their testimony, and resolves conflicts and inconsistencies in the testimony. *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). An appellate court may not substitute its judgment for that of the trier of fact, even though, after reviewing the evidence, it may have reached a different conclusion. *Essex Crane Rental Corp. v. Striland Constr. Co.*, 753 S.W.2d 751, 755 (Tex. App.—Dallas 1988, writ denied). The amount of evidence necessary to affirm a judgment is far less than necessary to reverse a judgment. *Rowlett/2000, Ltd. v. City of Rowlett*, 231 S.W.3d 587, 590 (Tex. App.—Dallas 2007, no pet.).

### III. COLOR OF TITLE

In her first issue, Iva contends that she has a claim for the property under color of title. We disagree.

### A. Applicable Law

Title is defined as "a regular chain of transfers of real property from or under the sovereignty of the soil." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(4) (West 2002). Color of title is defined as a consecutive chain of transfers to the person in possession that: (1) is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or (2) is based on a certificate of headright, land warrant, or land scrip. *Id.* § 16.021(2)(A). "[I]n an action of trespass to try title, plaintiff may recover by virtue of prior possession, without proof of title, where no title is shown in the defendant. Such proof, however, is but a rule of evidence and not of property, and may be rebutted." *Lorino v. Crawford Packing Co.*, 142 Tex. 51, 175 S.W.2d 410, 413 (1943). The plaintiff in a trespass to try title action must recover, if at all, on the strength of its own title and not on the weakness of the defendant's title. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994). The plaintiff has the burden to establish superior title by showing she has: (1) title emanating from the sovereignty of the soil; (2) a superior title in itself emanating from a common source to which the defendant claims; (3) title by adverse possession; or (4) title by earlier possession coupled with proof that possession has not been abandoned. *Id.*; *see also Griffin v. Griffin*, No. 10-08-00327-CV, 2010 Tex. App. LEXIS 272, at *14 (Tex. App.—Waco Jan. 13, 2010, pet. denied) (mem. op.).

**B. Discussion**

Here, the trial court, in its findings of fact, stated that: "[t]here was no deed or other recorded instrument conveying any interest in the 5.18 acres to Iva Jean Carrington introduced into evidence." In its conclusions of law, the trial court noted that Iva "has no claim of ownership under color of title" and that "Anthony Carrington received fee simple title by way of the No Warranty Deed recorded in 1996." At trial, Anthony testified that he purchased the property from Major in 1996 and, thus, owned the property. Moreover, Sam Moak, the president of Sam Houston Landmark Title Company, stated that he conducted a title search for the Goffneys and that the title search revealed that Anthony owned the property in fee simple. Iva tendered evidence, which she alleged refuted Anthony's ownership claims, including a letter written by Emma, stating that each of the five children were to receive one acre of land. Curiously, this letter was notarized on June 9, 2010, after the Goffneys initiated their lawsuits, and it was never recorded in the county records. And furthermore, at the time the letter was drafted, Emma no longer owned the land—Anthony did. In any event, it was within the province of the trial court to weigh and reconcile the evidence presented at trial, and in doing so, it clearly believed the testimony of Anthony and Moak with regard to ownership of the property. *See Lyles*, 825 S.W.2d at 493; *Clancy*, 705 S.W.2d at 826. Because there is more than a scintilla of evidence to support the trial court's conclusions that: (1) Anthony owned the property in fee simple prior to the sale to the Goffneys; and (2) Iva did not have a claim under color of title, we will not disturb the trial court's findings. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.

App.—Austin 1992, no writ) (stating that conclusions of law may not be reversed unless they are erroneous as a matter of law); *see also Lorino*, 175 S.W.2d at 413. As such, we conclude that the evidence supporting the trial court's findings as to color of title is legally and factually sufficient. *See Dow Chem. Co.*, 46 S.W.3d at 241; *Cain*, 709 S.W.2d at 176. Iva's first issue is overruled.

## IV. ADVERSE POSSESSION

In her second issue, Iva asserts that she has title to the property by virtue of adverse possession.

## A. Applicable Law

Adverse possession is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" throughout the statutory period—ten years here. TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.021(1), 16.026 (West 2002); *see Moore v. Stone*, 255 S.W.3d 284, 288 (Tex. App.—Waco 2008, pet. denied). Section 16.021(1) specifically requires that such possession of real property be "inconsistent with" and "hostile to" the claims of all others. *See Moore*, 255 S.W.3d at 288 (citing *Minh Thu Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006)). Essentially, to prevail on a claim of adverse possession, the elements to prove by a preponderance of the evidence are: (1) actual and visible possession of the disputed property; (2) that is adverse and hostile to the claim of the owner of record title; (3) that is open and notorious; (4) that is peaceable; (5) that is exclusive; and (6) involves continuous cultivation, use, or enjoyment for ten years.

*Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 213 (Tex. App.—Texarkana 2006, pet. denied) (citing *Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 193-94 (Tex. 2003)).

"One seeking to establish title to land by virtue of the statute of limitations has the burden of proving every fact essential to that claim by a preponderance of the evidence." *Id.* (citing *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990)). Inferences from the facts are never indulged in the adverse claimant's favor. *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985); *see Moore*, 255 S.W.3d at 288. Whether adverse possession has been established is ordinarily a question of fact. *Gannon*, 686 S.W.2d at 595.

## B. Discussion

On appeal, Iva claims that because she occupied, maintained, and paid taxes on the land from November 1996 until the present, she "has openly, notoriously, and when required, hostile to anyone else's claim, retained possession of the 5.18[-]acre tract." In its findings of fact, the trial court noted that the testimony "established that Iva Jean Carrington has lived on the property since 1996 with the permission of Anthony Carrington" and that "Anthony Carrington resided on and used the property until on or about November 2009." As a result, the trial court concluded that: (1) "Iva Jean Carrington enjoyed the use and possession of a portion of the 5.18 acres with full knowledge and consent of Anthony Carrington"; and (2) "Iva Jean Carrington never exercised open, notorious[,] and hostile use of the 5.18 acres."

Anthony testified that he was aware that Iva was living on a portion of the 5.18 acres and that she was doing so with his permission. Iva admitted that all of the family members used or lived on the property at various times and that she did not try to

exclude any of them from using or exercising possession of the property. In concluding that Iva did not adversely possess the property, the trial court found Anthony's statement about granting Iva permission to live on the property to be credible, which it was entitled to do. *See Lyles*, 825 S.W.2d at 493; *Clancy*, 705 S.W.2d at 826. The evidence does not demonstrate that Iva possessed the entire 5.18 acres to the exclusion of all others or that her possession of the one-acre portion of the property was hostile, especially considering that Anthony, the owner of record title, testified that he granted Iva permission to move onto the property. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.021(1), 16.026; *see also Pool*, 124 S.W.3d at 193-94; *Glover*, 187 S.W.3d at 213. Based on our review of the record, we find that there is sufficient evidence to support the trial court's finding that Iva did not adversely possess the property. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.021(1), 16.026; *Pool*, 124 S.W.3d at 193-94; *Glover*, 187 S.W.3d at 213; *see also Dow Chem. Co.*, 46 S.W.3d at 241; *Cain*, 709 S.W.2d at 176. Accordingly, Iva's second issue is overruled.

## V. IVA'S CONTRACT CLAIM

In her fifth issue, Iva argues that the trial court erred in concluding that she had no contractual claim to the 5.18 acres and that she had breached the contract she entered into with Anthony.

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance, or tendered performance, by the claimant; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach.

*Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex. App.—El Paso 2000, no pet.).

The trial court stated that "[a]n agreement existed between Anthony Carrington and Iva Jean Carrington for the purchase of a 1[-]acre tract out of the 5.18[-]acre parent tract" and that "Iva Jean Carrington, by her own admission, failed to pay the money owed as part of that agreement." Accordingly, the trial court concluded that Iva breached the contract with Anthony and, as a result, did not have a contractual claim to the property. In her testimony, Iva acknowledged that she entered into an agreement with Anthony for the purchase of the land, but she admitted to not paying the full balance owed to Anthony for the property. The contract was admitted into evidence, and the record demonstrated that Iva owed Anthony the remaining $2,650 balance for the property.

On appeal, Iva argues that Anthony did not honor the contract because he sought to evict her and because he did not forgive her failure to make payments under the contract. By failing to pay the $2,650 balance owed, Iva did not perform her duties under the contract, yet Iva continued to live on the property. Because Anthony found a buyer for the property and because she had not completely paid for the property in accordance with the contract, Anthony sought to have Iva evicted. Furthermore, the express language of the contract did not require that Anthony forgive Iva for failing to make payments for the property. In fact, the contract did not address that contingency at all. Based on our review of the record, we conclude that there exists sufficient evidence to support the trial court's finding that Iva breached the contract with

Anthony, and as a result, Iva did not have a contractual claim to the property. *See Hornburg*, 20 S.W.3d at 758; *see also Dow Chem. Co.*, 46 S.W.3d at 241; *Cain*, 709 S.W.2d at 176. Iva's fifth issue is overruled.

## VI. WHETHER THE GOFFNEYS WERE GOOD-FAITH PURCHASERS AND OWNED THE LAND IN FEE SIMPLE

In her third and fourth issues, Iva complains about the sale of the property to the Goffneys. In particular, Iva alleges that the Goffneys were not good-faith purchasers of the property because they had knowledge that she was living on a part of the land and that the Goffneys did not own the property in fee simple as a result of her possession of the land. Appellees counter that Iva lacked standing to challenge the sale of the property to the Goffneys because she does not have any cognizable legal right to the land.

### A. Applicable Law

Standing is a necessary component of subject-matter jurisdiction and involves the court's power to hear a case. *McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 231 (Tex. 2001); *Walston v. Lockhart*, 62 S.W.3d 257, 259 (Tex. App.—Waco 2001, pet. denied). A question of subject-matter jurisdiction is fundamental and may be raised at any time. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003); *Walston*, 62 S.W.3d at 259. Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). The general test for standing in Texas requires that there "(a) shall be a real controversy between the parties,

which (b) will be actually determined by the judicial declaration sought." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

A cause of action for injury to real property accrues when the injury is committed. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex. 1984); *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 26-27 (Tex. App.—Tyler 2002, pet. denied). The right to sue for the injury is a personal right that belongs to the person who owns the property at the time of the injury. *Pluff*, 94 S.W.3d at 27; *Abbott v. City of Princeton*, 721 S.W.2d 872, 875 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Because it is a personal right, the right does not pass to a subsequent purchaser of the property, or, in other words, the right does not run with the land, unless there is an express assignment of the cause of action to the subsequent purchaser. *Pluff*, 94 S.W.3d at 27; *Abbott*, 721 S.W.2d at 875.

## B. Discussion

Here, Iva did not have an interest in the land at the time of the sale to the Goffneys. As we concluded earlier, Iva breached the contract she had with Anthony for the sale of the land, and she did not obtain title to the land by adverse possession or under color of title. Because the right to sue for injury to real property does not run with the land and because there is no express assignment of any rights to Iva with respect to the land, she lacks standing to complain about any injury to the land as a result of the Goffneys' purchase. *See Pluff*, 94 S.W.3d at 27; *see also Abbott*, 721 S.W.2d at 875. The right to sue for injury to the property at the time of the sale to the Goffneys solely belonged to the owner of the property at the time—Anthony. *See Pluff*, 94 S.W.3d

at 27; *see also Abbott*, 721 S.W.2d at 875. Because she lacked standing to challenge the Goffneys' purchase of the land, we overrule Iva's third and fourth issues.

## VII. CONCLUSION

Having overruled all of Iva's issues, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
    Affirmed
Opinion delivered and filed October 12, 2011
[CV06]