**Motion for Rehearing Denied and Dissenting Opinion filed November 7, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-21-00570-CV

**CITY OF HOUSTON, Appellant**

**V.**

**STEVEN M. DUNBAR, Appellee**

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2020-31030**

## DISSENTING OPINION ON DENIAL OF REHEARING

Because this case involves the correct application of the substantial evidence standard of review also known as the "little or no evidence" standard[1], I would grant rehearing. The evidence shows the communications between Dunbar and Galvan are

---

[1] "For this reason, a better name for the substantial evidence rule might be the little or no evidence rule." 15 Tex. Tech. Admin. L.J. 303, 304 (2013-2014), *Time for a Change: An Analysis of the Substantial Evidence Rule in the Context of Contested Licensee Hearings and the Case for Amending Tex. Gov't Code Sec. 2001.174*, De Leon, Benjamin S., Ponce, Athena, Walker, Chelsea A.

numerous and unchallenged. Dunbar was charged with "*failure to report*." The trial court found that there was no substantial evidence to support the finding that *Dunbar failed to report*. Because the administrative findings, inferences, conclusions, or decisions are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion, I would affirm the trial court below. Because the panel has rejected the following analysis, I dissent to the denial of rehearing.

## I.    Legal Principles

Government Code section 2001.174 provides for judicial review and further defines the "substantial evidence" standard. *See* Tex. Gov't Code § 2001.174. While not precedent in Houston Fire Department cases, the legislative language is persuasive and should be adopted or followed. "When analyzing a specific provision, we 'consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent.'" *Bailey v. Smith*, 581 S.W.3d 374, 389 (Tex. App.—Austin 2019, pet. denied) (quoting *Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017)). "Further, we construe statutory language against the backdrop of common law, assuming the Legislature is familiar with common-law traditions and principles." *Marino v. Lenoir*, 526 S.W.3d 403, 409 (Tex. 2017). We also may consider 'former statutory provisions, including laws on the same or similar subjects' and the 'consequences of a particular construction.' *Bailey*, 581 S.W.3d at 389 (quoting Tex. Gov't Code § 311.023(4),(5)).

Government Code section 2001.174 mandates that a court:

shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative

2

findings, inferences, conclusions, or decisions are:

\*\*\*\*\*

(E) *not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole;* or

(F) *arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.* (emphasis added)

Tex. Gov't Code § 2001.174(2)(E),(F).

## II. The Charge

HFD rules and regulations provide officers "*must report*." The term "*report*" as used in this context is a verb, which means in the transitive, "to give an account of: RELATE" or otherwise communicate, and in the intransitive, "to give an account: TELL" Merriam-Webster.com, 2011. https://www.merriam-webster.com/dictionary/report (last visited October 24, 2023).

## III. The Issues

The evidence of the Dunbar-Galvan communication was both affirmed by Galvan and unchallenged. The only remaining question was if the communication constituted a report and if Galvan was an appropriate person to receive these communications.

### A. Galvan was the proper person to receive the report

Galvan testified *he* was a proper person to receive reports of, "public event

3

issues."[2]

As regards the Galvan-Dunbar communications, Galvan, the second-highest ranking member of HFD, was talking with Dunbar, a subordinate, about violations of HFD rules and regulations by other members of the HFD. As such, Galvan became aware and therefore had the same duty to report under the same rule with which Dunbar was charged with violating. Yet Galvan never communicated anything to anyone else. This is additional evidence Galvan was in fact the person to receive such a report. Other than a reference to Galvan not being in Dunbar's direct chain of command, there was no direct evidence: (1) that such an incident report can only be made to a direct report, (2) who Dunbar's direct report was, (3) that Dunbar did not report this incident to him/her, or for that matter, (4) by what specific method or means, if any, the report must be made.

## B.    Did Dunbar Report?

The definition of report is to "relate or communicate the operative facts." The evidence shows the operative facts were communicated. Galvan related being surprised to learn of the event from Dunbar's communications, but no evidence indicated any such surprise or lack of awareness of any other facts or issues following the Dunbar communications. Neither Galvan, nor the HFD investigative report, show any evidence of new facts or new information that was not already

---

[2] Galvan testified:

Q: (By DUNBAR) Okay, So, as the PIO, you are basically over these public affairs events; is that correct?

A: (By GALVAN): That is correct.

Q: (By DUNBAR): So if there was an issue with a public event, who would an individual come to?

A: (By GALVAN): To me.

4

reported to Galvan by Dunbar.

Accepting that all operative facts were communicated by Dunbar to Galvan, the charge against Dunbar should fail solely on the distinction between failure to report and failure to properly report.

However, if characteristics relating to formality of the report were at issue, there would also be need for evidence of education, training, standard operating procedures, or practice pertaining to the appropriateness or quality of reporting requirements. This record is completely absent of any such evidence. In reviewing an "insufficient-evidence" point challenging the factual sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, the reviewing court may set aside the finding only if a review of all the evidence, both for and against the finding, demonstrates that the finding is clearly wrong and manifestly unjust. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Cason v. Taylor*, 51 S.W.3d 397, 404 (Tex. App.—Waco 2001, no pet.). Because no evidence of formal, or informal, requirements was presented, any commission ruling based upon the manor, means or formality of the report is unsupported by any record evidence.

Nevertheless, Chief Galvan testified he did not "***consider***" Dunbar's communications as a "report" because they were "just talking as friends." But his subjective characterization is both irrelevant and unsupported by any evidence or standard.

Galvan admitted he had numerous phone conversations, voice, text, and video messages from Dunbar. Dunbar sent Galvan a social media video post. He told Galvan the video was on social media and would hit the news, and that all [heck] would break loose, yet Galvan posits this was not a "report" because he and Dunbar were "just talking as friends."

5

This was not two friends swapping "fish stories." The matter was of such seriousness that when the video (as Dunbar reported and predicted) did become evening news, Dunbar, along with all other HFD personnel involved, received 48-hour notification letters of investigation. This letter formally notified all involved that the incident which occurred was serious and that they were referred to the HFD Professional Standards Office. It further **ordered** them to immediately cease any communications with others related to the incident.

I conclude the evidence established the communication between Dunbar and Galvan, that it was a matter of grave seriousness, relating to a "public event." The communications related to HFD rules and regulations, violation of those rules and regulations by individual HFD personnel (all of whom were subsequently reprimanded), which occurred at a 9/11 HFD sponsored "public event," held at an HFD fire station, hosted by HFD employees, attended by Houston Rockets Players, Houston Rockets photographers, videographers and media relations personnel, and by local Houston television reporters and crews, along with four HFD assistant chiefs in attendance. One of those in attendance was Chief Galvan, the designated HFD Media and Public Information Officer (PIO), second in command only to Fire Chief Peña.

As a matter of law, any conclusion these serious communications could be characterized as only "just between friends" is not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. *See* Tex. Gov't Code § 2001.174(2)(E)).

Even arguendo, if the statement were "between friends," that would not diminish the quality or factual communication of the operative facts by Dunbar to Chief Galvan constituting a "report."

Moreover, the City presented no evidence to establish any evidential

6

foundation or basis for either the fact of such friendship, (When asked, Galvan couldn't even recall the last time he and Dunbar spoke socially, rather Galvan referred to a business communication because Galvan had lost and needed Dunbar's phone number) or the basis upon which to distinguish the communication as "friendship" as compared to any other characterization. It was HFD business that created the Dunbar-Galvan relationship (friends or not) and it was HFD business that was being discussed; specifically HFD rules and regulations, HFD personnel and their violations of the HFD rules and how this will likely become a public relations problem for the HFD with the HFD Public Information Officer. Under these circumstances, without any other evidence, the commission was without a basis for a "friendship" characterization, or that the report failed because they were purportedly friends. I conclude any such conclusion is without evidence and violates Government Code section 2001.174(2)(F) as arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *See* Tex. Gov't Code § 2001.174(2)(F).

The majority opinion on original submission criticized my prior dissent for "irrelevant military references."[3] While not relevant to a substantial evidence review, the language of the HFD code tracks directly from the miliary code of conduct and the reference is relevant for three important factors in interpreting the rule. First, the term "report" as used in context is a verb, an action to be taken. Second, particularly

---

[3] *See City of Houston v. Dunbar*, No. 14-21-00570-CV, 2023 WL 3596260, at *8 (Tex. App.—Houston [14th Dist.] May 23, 2023, no pet.) (mem. op.) (Zimmerer, J., dissenting) ("The record at both the commission and at the trial court is completely lacking any definition of what constitutes a "report" or any standard operating procedures or training, education, custom or practice which would establish a basis for defining when or how an HFD report must be made."). As a comparison, see U.S. Marine Corps, Order 3504.2A https://www.marines.mil/Portals/1/MCO%203504.2A.pdf (last visited October 24, 2023).

where urgency is required, a "report" is often initiated by telephone call, fax, text message or voice message. Last, that reporting is not always required through the chain of command and may depend upon circumstances. Here, Galvan testified he was the person to whom a report should be made. Dunbar followed, Rules and Regulations, section 6.06 when he fully and completely communicated all operative facts to Galvan. By doing so, Dunbar reported, in advance, an impending public relations disaster when he communicated the operative facts to Galvan, the PIO. In any other organization, Dunbar's actions should have earned him a commendation.

Because the substantial evidence clearly established Dunbar initiated telephone calls, voice-, video-, and text-messages communicating the operative facts to an appropriate superior officer the same day as the event, he initiated a "report" as contemplated in HFD Reference No. I-01, Rules and Regulations, section 6.06.

Because that is what the trial court found, I would grant rehearing and affirm. Because the panel fails to do so, I dissent to the panel's decision to deny rehearing.


/s/ Jerry Zimmerer
Justice



Panel consists of Justices Zimmerer, Spain, and Poissant (Zimmerer, J. dissenting to denial of rehearing).